**Robert Henry MULLINS, Petitioner,**

v.

**Donald R. EVANS, Superintendent Colorado State Penitentiary, Respondent.**

**Civ. A. No. 76–M–682.**

United States District Court,
D. Colorado.

Aug. 6, 1979.

Charles F. Willett, Delta, Colo., for plaintiff.

Robert G. Lehnert, Asst. Atty. Gen., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 by an inmate of the Colorado State Penitentiary serving a life sentence on a 1972 conviction of first degree murder by jury verdict. The principal claim is the lack of effective assistance of counsel in contravention of the protection afforded by the Sixth Amendment to the United States Constitution.

This case arose in the small community of Delta, Colorado where the trial was held in November 1972. Mr. Mullins was represented by two lawyers from the Colorado Public Defender's Office, one of whom was assisting as a learning experience. The primary counsel had four years of defender experience including more than one hundred murder cases before the Mullins trial.

Colorado law provided for the death penalty for first degree murder at the time of the trial. Colorado also had a felony classification of second degree murder. The procedure then in effect was that the evidence was submitted to the jury with possible verdicts of first degree murder, second degree murder or any lesser offense involved in the evidence. Upon a verdict of guilty of first degree murder, additional evidence in aggravation and mitigation of the crime was customarily submitted to the jury to determine whether the penalty should be death, life imprisonment, or a recommendation of leniency. C.R.S.1963 (1972 Sess. Laws), 39–11–103(1). Upon a recommendation of leniency the trial judge was permitted to exercise discretion to impose a sentence within a minimum and maximum range of 15 years to life. C.R.S.1963 (1972 Sess.Laws), 39–11–103(2). Similar provisions applied to a guilty plea. C.R.S.1963 (1972 Sess.Laws), 39–11–103(3). Second degree murder was punishable by a minimum sentence of 10 years and a maximum of 50 years imprisonment. C.R.S.1963 (1971 Supp.) 40–3–103(3) and 40–1–105.

A few months before the trial date, the Supreme Court of the United States decided *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), with an opinion which cast doubt on the constitutionality of the Colorado death penalty.

While there were differing views among Colorado lawyers, the district attorney and the defender in the Mullins case agreed that the death penalty would not be submitted to the jury.

Parole eligibility presents the problem which confronted defense counsel for Robert Mullins. C.R.S.1963, 39–18–7(3) provided that a person imprisoned under a life sentence became eligible for parole after serving 10 calendar years. C.R.S.1963, 39–18–7. An inmate under a term of years must serve the minimum sentence less "time allowed for good behavior" before he can be released on parole. C.R.S.1963, 39–18–1(3)(c). Good time credits increase with the time served. If the judge imposed a sentence of not less than 49 years and not more than 50 years for second degree murder, the inmate would not become eligible for parole until he had served 29 years and 3 months.

The public defender was extremely apprehensive about the possibility that his client would receive a severe sentence from the particular trial judge who had the case if he had the opportunity to exercise any discretion on the sentence, resulting in more actual time in prison than what would be expected under a life sentence. Accordingly, after discussing the matter with other experienced lawyers in the public defender's office, and after consideration of other cases in which the same judge had imposed very long prison terms on persons found guilty of second degree murder, the lawyer devised a trial strategy which was designed to obtain a verdict of first degree murder without any recommendation of leniency.

At the time of his trial, Robert Mullins was 24 years old with a tenth grade education. While he had a GED, he had no work experience other than as a common laborer, and he had no previous court experience other than in traffic matters. The inexperienced lawyer was given the task of explaining the trial strategy to Mullins to obtain his consent to this rather unusual approach. The primary defender also discussed it with him shortly before the trial. Mullins did acknowledge that he was willing to accept the advice of his lawyers in the case.

The approach to jury selection was entirely consistent with the devised strategy to obtain the worst possible verdict. On voir dire of the jury panel the public defender emphasized that the verdict might be first degree murder and he told the prospective jurors that he doubted their deliberations would require fifteen minutes. He accepted the jury with eight unexercised peremptory challenges, leaving on the jury people who had previous knowledge of the case, one who was acquainted with the victim, one whose son had been murdered a few years earlier, a law enforcement officer, and a classmate of the victim who on voir dire said that "Dean was murdered." He excused a juror who flatly stated "I feel he's innocent until he's proven guilty."

The defender made no opening statement, objected only three times to prosecution evidence, made no closing argument, specifically stated in front of the jury that he had advised Mullins that he could testify in his own defense and that Mullins did not wish to testify, and permitted the case to be submitted to the jury on a record in which the result was a foregone conclusion. In his own words, the defender "threw the fight."

The evidence presented showed that the defendant was divorced and his ex-wife was granted custody of their two small children. On August 27, 1972, the defendant's ex-wife married Dean Johnson, a man who was known to Robert Mullins. Late in the evening on the day after the wedding, Robert Mullins arrived at the house occupied by his ex-wife, her new husband, and the children. He knocked on the door which was answered by his ex-wife. When he asked for Dean Johnson, she said he was in bed and the defendant followed her into the bedroom where Johnson was on the bed, with the defendant's infant daughter in a cradle next to the bed. Robert Mullins told Dean Johnson to stand up and when he did so,

Mullins shot him, emptying a handgun into Johnson at point blank range. Mullins then threw the gun out the window, sat down and told his ex-wife to call the police. When the police arrived, Mullins made no effort to resist arrest or to deny guilt.

At the penalty hearing the defense counsel did not offer a statement in mitigation and he did not respond to the prosecutor's argument in aggravation. The defense strategy worked and the jury verdict was first degree murder with no recommendation of leniency, resulting in the life sentence which the defendant now is serving.

The conviction was appealed to and affirmed by the Colorado Supreme Court. *People v. Mullins,* 188 Colo. 23, 532 P.2d 733 (1975). The public defender's office represented Mr. Mullins on the direct appeal. There was also a motion for postconviction relief under Rule 35(b) of the Colorado Rules of Criminal Procedure and Mr. Willett was appointed as counsel to represent Mr. Mullins in that motion because it was based, in part, on ineffective trial counsel. No testimony was presented on the Rule 35 motion because of the chilling effect of a ruling that under Colorado precedent any testimony by the defendant concerning the conduct of his counsel works a waiver of the attorney-client privilege. The denial of relief under Rule 35 was also approved by the Colorado Supreme Court. *People v. Mullins,* 188 Colo. 29, 532 P.2d 736 (1975). The Colorado court described the tactics of defense counsel as "low key" and "non-aggressive". *Id.* at 738.

The record before me now differs from that presented to the Colorado Supreme Court in that both of the defense counsel and Robert Mullins did appear and testify to the defense strategy at the evidentiary hearing held in this court on the petition for habeas corpus.

■ The test for evaluating the effectiveness of defense counsel in a criminal case in the Tenth Circuit Court of Appeals continues to be whether the trial was "a mockery, a sham or a farce." *Opie v. Meacham,* 419 F.2d 465 (10th Cir. 1969) *cert. denied,* 399 U.S. 927, 90 S.Ct. 2239, 26 L.Ed.2d 793 (1970). The trial of *People v. Mullins* was just that—a sham. Yet, this case is different precisely because the defense counsel purposefully turned the trial into a mockery of an adversary proceeding to avoid what he perceived to be the clear danger of a worse result from any lesser verdict. A plea of guilty to first degree murder could not have been made without the approval of the district attorney and the trial judge. That, too, would have necessarily involved the sentencing discretion of the judge and it was just that which the defense counsel sought to avoid through the artful dodge of seeming to contest the case. Accordingly, what really happened here is that the public defender entered a cleverly disguised plea of guilty to first degree murder.

■ The error in the approach taken by the defender in this case is in the underlying assumption that his role is to reach a result which would give the defendant the possibility of an earlier release from confinement than what might occur if he had fought the good fight and received a recommendation of leniency or second degree murder. In my view, the duty of every defense counsel in the adversary system of justice is nothing less than to insure that the issues of fact are properly presented to a fair and impartial jury under the rules of evidence with proper instructions on the law and to give the defendant the benefit of all advantageous arguments available under the evidence.

To throw the fight to avoid the sentencing discretion of a trial judge is an advance admission of inadequacy in another aspect of advocacy—persuading the court on a plea of clemency. It is also an arrogation unto oneself of a decision which our system of justice does not give to defense counsel. Whatever the wisdom of it, the Colorado law prevailing at the time of this case gave responsibility for determining sentence to

the trial judge on a homicide verdict of first degree murder with a recommendation for leniency, or a verdict of second degree murder.

Another assumption of the defense strategy in this case is unwarranted. That is the belief that a parole eligibility date would reasonably be expected to result in an actual earlier release. That ignores the authority of the Colorado Parole Board under Colorado law.

The Colorado Supreme Court has consistently affirmed the absolute discretion of the Parole Board in granting or denying release on parole. *Berry v. Parole Bd.,* 148 Colo. 547, 367 P.2d 338 (1961); *Wilkerson v. Patterson,* 174 Colo. 264, 483 P.2d 365 (1971). Accordingly, Robert Mullins would have no recourse to a Parole Board decision denying him release after 10 years, 20 years, or at any time.

Ironically, effective July 1, 1972, the newly revised Colorado criminal code provided for a limited appellate review of sentences if the minimum sentence imposed by a judge was more than three years greater than the statutory minimum for that offense. 1963 C.R.S. (1971 Supp.) 40–1–509. Such a limited review would have been available if Mullins had been sentenced to a minimum of more than 13 years for second degree murder or if he had been sentenced to more than a minimum of 18 years for first degree murder upon a leniency recommendation. Accordingly, by using the sham defense to obtain a conviction of first degree murder and a straight life sentence, the defender lost an opportunity to make an appellate challenge to the constitutionality of the interplay of the sentencing—parole statutes and to the excessive character of the possible severe sentence which the trial judge may have imposed under a lesser verdict. The Colorado Supreme Court might well have been receptive to such an appeal in view of the opinion in *People v. Montoya,* Colo., 582 P.2d 673 (1978).

Finally, it must be said that if such a defense strategy is to be used, it is the functional equivalent of a plea of guilty, and accordingly, there must be the same knowing and voluntary waiver of all of the protection of a true trial by jury as would be attendant upon an actual plea of guilty. While there is no doubt that this defense technique was discussed with Mr. Mullins, there certainly is considerable question about his understanding of the consequences and his acceptance of them.

The necessary conclusion is that the defendant's conviction was obtained without the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and that conviction must be set aside.

An additional contention of the petitioner is that there is some infirmity in the Colorado public defender system because the state public defender is the appointee of the Supreme Court and that is a chilling circumstance affecting the advocacy of a defendant's position by the public defender before that court. The Colorado Supreme Court considered and rejected that contention in the appeal of the denial of relief under Rule 35 in *People v. Mullins,* 188 Colo. 29, 532 P.2d 736 (1975). I have no reason to disagree with that opinion.

It is not necessary for this court to decide the constitutionality of the Colorado statutes to grant the requested relief. When this case was presented the Colorado General Assembly was considering a complete revision of the sentencing statutes. That has since been done; however, the new statute was expressly made inapplicable to offenses committed before July 1, 1979. House Bill No. 1589, Section 25. If there is to be a new trial for Robert Mullins, the determination of what law shall govern is a matter which must be left to the Colorado courts.

Upon the foregoing findings of fact and conclusions of law, it is

ORDERED that the first degree murder conviction of Robert Henry Mullins was in violation of his right to have the effective

assistance of counsel for his defense as provided in the Sixth Amendment to the United States Constitution and such conviction is therefore invalid, and it is

FURTHER ORDERED that the State of Colorado shall have ninety days within which to bring Robert Henry Mullins to trial on the charge which has been the subject of these proceedings, and it is

FURTHER ORDERED that if Robert Henry Mullins is not brought to trial within ninety days, he is to be discharged from the custody of the respondent.