Court of Appeals No. 14CA1058
City and County of Denver District Court No. 12CR3957 Honorable Elizabeth A. Starrs, Judge
The People of the State of Colorado, Plaintiff-Appellee,
v.
Erin D. Janis,
Defendant-Appellant.
JUDGMENT REVERSED AND CASE 
REMANDED WITH DIRECTIONS
Division VI
Opinion by JUDGE NAVARRO 
Terry and Freyre, JJ., concur
Announced May 5, 2016
Cynthia H. Coffman, Attorney General, Carmen Moraleda, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Gregory Lansky, Alternate Defense Counsel, Aurora, Colorado, for Defendant-Appellant
 
¶ 1       Defendant, Erin D. Janis, appeals the judgment of conviction entered on a jury verdict finding her guilty of first degree assault. This case presents the following question: When the defendant is in custody, can defense counsel waive the defendant’s constitutional right to be present for a critical stage of trial by informing the trial court that the defendant does not wish to be present? We conclude that the answer is “no.” The defendant’s personal waiver of this right on the record is required under such circumstances. As a result, we further conclude that the record here does not affirmatively show that Janis validly waived her constitutional right to be present during her accuser’s trial testimony. We reverse the judgment and remand for a new trial.
I. Factual and Procedural History
¶ 2       In the early morning hours of August 31, 2012, Janis stabbed Farest Logan with a knife outside a bar on Colfax Avenue in Denver. Janis’s friend then struck Logan, and both Janis and her friend jogged away from the scene. Janis was charged with committing assault in the first degree in violation of section 18-3-202(1)(a), C.R.S. 2015.
¶ 3       At trial, Janis asserted self-defense — an affirmative defense in which she admitted that she had stabbed Logan. She testified that Logan had “helped” another person rape her two months before the stabbing; he had physically assaulted her earlier on the night of the stabbing; and he had, just before she stabbed him, threatened to terminate her pregnancy by assaulting her again. (Janis was pregnant at the time of the incident.) Because she suffered from severe post-traumatic stress disorder (PTSD), Janis asserted that she became hypervigilant and saw threats where someone who did not suffer PTSD might not see them. She testified that she “felt it was necessary” to “protect” herself from Logan.
¶ 4       Logan acknowledged that he knew Janis “as a street person,” 
but he denied threatening her or assaulting her earlier that night. He testified that, at the time of the stabbing, he was speaking with a friend, had one hand in his pocket, and was unarmed.
¶ 5       A jury convicted Janis as charged, and the trial court sentenced her to twelve years in prison.
II. Constitutional Right To Be Present At Trial
¶ 6       Janis contends that she did not validly waive her constitutional right to be present during Logan’s testimony and that her absence from trial during his testimony amounted to reversible error. We agree.
A. Procedural History
¶ 7        On the first day of trial and before the jury was seated, the following colloquy occurred in response to defense counsel’s oral motion:
DEFENSE COUNSEL: Judge, Ms. Janis has been diagnosed with severe PTSD for severe childhood trauma. She’s on a lot of psychotropic medications.
In discussing this issue with [the defense’s expert witness in forensic psychology], [the expert] suggested to me to approach the Court and ask if we could have some sort of signal that Ms. Janis could give when she is losing control and she could be removed from the courtroom. If she is forced to sit here and go through a lot of what I think we’re going to have in this trial, [the expert] believes[,] and I agree, that it’s going to start to retraumatize her. And I don’t think there’s any purpose for that.
So I’m going to ask the Court if we could do that, if she could be removed from the courtroom when she feels like she can’t handle that anymore.
THE COURT: [Prosecutor], do you have a position on this?
PROSECUTOR: Well, I think she has a right to be here for the trial, but I don’t think she has to stay.
THE COURT: That was my analysis as well.
PROSECUTOR: She’s free to leave if she wants to. . . .
THE COURT [to defense counsel]: Is the signal between you two or you’ll tell me or what?
DEFENSE COUNSEL: I suppose the best way is if she can just tell me, and I’ll just ask to approach the bench.
THE COURT: Okay. All right. Why don’t we do that, because it’s my feeling Ms. Janis has a right to be here for all of the trial. And if she chooses for her medical, emotional — for whatever reason, not to be at certain parts, that’s her choice.
The trial court made no inquiry of Janis, and she did not make any statements to the court.[1]
¶ 8       On the second day of trial, Janis was present, in custody, when Logan began to testify. As Logan began speaking, defense counsel asked to approach the bench and told the court, “My client is very uncomfortable. She would like to leave the courtroom now.” The court responded, “[O]kay” and excused the jury. The following exchange occurred:
PROSECUTOR: Your Honor, before the defendant leaves, I’d like to make a record that she is voluntarily leaving the trial at this point in time. No one is forcing her to do it.
DEFENSE COUNSEL: We’ve already made this record.
PROSECUTOR: This actively and contemporaneously needs to be made. She’s not being forced to be removed from the courtroom. She’s leaving voluntarily.[2]
¶ 9        The court asked no questions of Janis, and she made no statements on the record. The record reveals that she was removed from the courtroom. Defense counsel asked the court to instruct the jury not to consider Janis’s absence, and the court agreed. Then, the following discussion took place about how Logan could identify Janis if she were not present and whether the defense would stipulate to such identification:
DEFENSE COUNSEL: Judge, I cannot stipulate on behalf of my client for such an essential element to the defense without discussing it with her.
. . . .
THE COURT: Okay. So why don’t we take a couple minutes and let you go talk to her about it.
[A recess was taken.]
THE COURT: We’ll go back on the record. [Defense counsel]?
DEFENSE COUNSEL: Judge, Ms. Janis says, if her only options are to be [dragged] back into the courtroom so Mr. Logan can identify her, she will stipulate.
THE COURT: Okay.
PROSECUTOR: It is important for the record to note, again, that she voluntarily left the courtroom, and she can choose to voluntarily return . . . . [T]here is no force being involved here. This is an active choice on the part of the defendant.
THE COURT: I think the record should reflect that. It’s an active choice of the defendant.
After Logan’s testimony, Janis was brought back into the courtroom.
B. Standard of Review
¶ 10       Whether a trial court violated a defendant’s right to be present is a constitutional question that we review de novo. People v. Wingfield, 2014 COA 173, ¶ 13. If a defendant’s right to be present was violated, and the issue was preserved at trial, we assess whether the constitutional error was harmless beyond a reasonable doubt. Luu v. People, 841 P.2d 271, 275 (Colo. 1992); see People v. Cardenas, 2015 COA 94M, ¶ 23. If the error was not preserved, however, we may reverse only if plain error occurred. See People v. Miller, 113 P.3d 743, 749 (Colo. 2005) (holding that unobjected-to constitutional “trial errors,” unlike “structural errors,” are subject to plain error analysis); Luu, 841 P.2d at 274-75 (holding that deprivation of the right to be present was a “trial error”); People v. Garcia, 251 P.3d 1152, 1156 (Colo. App. 2010) (applying plain error in this context).
¶ 11       We are not persuaded by the People’s contention that the doctrines of waiver or invited error apply to Janis’s claim. The People rely on the facts that defense counsel asked that Janis be removed during Logan’s testimony and counsel indicated that no further record discussion on the issue was necessary. As we shall explain, however, a defendant’s constitutional right to be present at a critical stage of trial is a personal right that cannot be waived by counsel.
¶ 12          Still, the record does not reveal that Janis personally objected to being removed. Therefore, plain error review applies here. See Garcia, 251 P.3d at 1156 (“Because neither defendant nor his counsel asserted a contemporaneous objection on this issue [of defendant’s right to be present], we review for plain error.”); People v. Munsey, 232 P.3d 113, 120 (Colo. App. 2009) (same).
C. The Record Does Not Show That Janis Validly Waived Her Constitutional Right To Be Present At Trial
1. Legal Principles
¶ 13       A defendant has a constitutional right to be present at every critical stage of trial. Luu, 841 P.2d at 273. “The [federal] constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but . . . [that] right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him.” Id. (alterations in original) (quoting United States v. Gagnon, 470 U.S. 522, 526 (1985)); see U.S. Const. amends. VI and XIV; Cardenas, ¶ 21.
¶ 14       Whether secured by the Sixth or Fourteenth Amendments, however, the right to presence is not absolute. Luu, 841 P.2d at 273; see People v. Stephenson, 165 P.3d 860, 868 (Colo. App. 2007). The Constitution requires that a defendant be allowed to be present only to the extent that a fair and just hearing would be thwarted by the defendant’s absence. Luu, 841 P.2d at 275; People v. Harris, 914 P.2d 434, 437 (Colo. App. 1995). Accordingly, a defendant must be able to show how his or her absence affected the ability to defend against the charges. Harris, 914 P.2d at 437. If the proceeding involves only legal questions, for instance, the defendant’s absence would not impact the defense because it is not likely the defendant would contribute any expertise on such matters. People v. Mumford, 275 P.3d 667, 672 (Colo. App. 2010), aff’d, 2012 CO 2. In contrast, a critical stage of criminal proceedings is one where there exists more than a minimal risk that the defendant’s absence might impair the right to a fair trial. Cardenas, ¶ 22.
¶ 15      In addition to the constitutional right, Crim. P. 43(a) gives a defendant the right to be present “at every stage of the trial,” with few exceptions. The scope of the right under this rule appears to be broader than the constitutional right. In Gagnon, for example, the United States Supreme Court engaged in separate analyses of the constitutional right to be present and the right to be present provided by the federal rule, which is substantially the same as the Colorado rule. 470 U.S. at 527-28; see Crumb v. People, 230 P.3d 726, 731 n.5 (Colo. 2010) (looking to federal law interpreting federal rule of criminal procedure that is similar to Colorado rule). After holding that the defendants did not have a constitutional right to presence at an in camera conference among the judge, defense counsel, and a juror regarding the juror’s possible bias, the Court assumed that the defendants did have such a right under Fed. R. Crim. P. 43. Gagnon, 470 U.S. at 527-28. Relying on Gagnon, the D.C. Circuit has recognized that “Rule 43(a) . . . mandates the defendant’s presence at certain stages of trial when [the] defendant’s presence would not be constitutionally required.” United States v. Gordon, 829 F.2d 119, 124 n.5 (D.C. Cir. 1987). This is true because “Rule 43 has traditionally been understood to codify both a defendant’s constitutional right and his common law right to presence. Accordingly its ‘protective scope’ is broader than the constitutional right alone.” Id. at 123 (citation omitted).
¶ 16       A defendant may waive the constitutional right to be present. Stephenson, 165 P.3d at 868. Because this right is fundamental, however, courts indulge every reasonable presumption against waiver of the right. See People v. Campbell, 785 P.2d 153, 154 (Colo. App. 1989), rev’d on other grounds, 814 P.2d 1 (Colo. 1991), abrogated on other grounds by People v. Shreck, 22 P.3d 68 (Colo. 2001). Indeed, “[s]o important is this right [to be present] that, except in cases of misdemeanor, it cannot be waived by counsel.” Penney v. People, 146 Colo. 95, 101, 360 P.2d 671, 673 (1961) (quoting Smith v. People, 8 Colo. 457, 458, 8 P. 920, 921 (1885)). Our supreme court reaffirmed this point in People v. Curtis, 681 P.2d 504 (Colo. 1984), when it included the right to be present at a critical stage of trial among those fundamental rights that can be waived only by the defendant personally, not by counsel. Id. at 511 (citing Penney). Divisions of this court have also recognized this principle. See, e.g., Wingfield, ¶ 19; People v. Mondragon, 217 P.3d 936, 941 (Colo. App. 2009); cf. Larson v. Tansy, 911 F.2d 392, 396 (10th Cir. 1990) (“Several circuits have held that defense counsel cannot waive a defendant’s right of presence at trial.”).[3]
 
¶ 17       Fundamental constitutional rights like the right to be present at trial require procedural safeguards concerning waiver. See Curtis, 681 P.2d at 511. If the defendant is available, the preferred approach is for the trial court to advise the defendant on the record of the right to be present and to determine whether the defendant knowingly, intelligently, and voluntarily waives this right. See People v. Price, 240 P.3d 557, 560 (Colo. App. 2010); Stephenson, 165 P.3d at 868; Campbell, 785 P.2d at 154-55. The trial court is responsible for ensuring that the defendant’s waiver of the right to be present at trial is voluntary, knowing, and intelligent, and the record must affirmatively establish such a valid waiver. See Price, 240 P.3d at 560; Campbell, 785 P.2d at 154; see also Gordon, 829 F.2d at 125 (recognizing that courts do not presume acquiescence in the loss of fundamental rights such as the right to presence).
¶ 18       In other words, “[w]here the defendant is in custody,” the serious and weighty responsibility of determining whether the defendant wants to waive a constitutional right requires that he or she be brought before the court, advised of that right, and then permitted to make an intelligent and competent waiver. Gordon, 829 F.2d at 125; see Curtis, 681 P.2d at 514. The benefits of obtaining a personal waiver of the right to be present on the record outweigh the burdens of doing so, at least when the defendant is in custody:
The slight additional burden on the criminal justice process wrought by a personal waiver requirement is more than offset by avoidance of lengthy appeals to determine whether the defendant’s right to presence has been violated. The practice of obtaining open court waivers is, as we have noted, particularly warranted in cases like this where the defendant is not out on bail, but remains in custody and readily available to the court.
Gordon, 829 F.2d at 125; see also Curtis, 681 P.2d at 511-12 (“[E]stablishing waiver of such a right in court on the record helps assure that the waiver is effective and facilitates meaningful appellate review without significantly impeding trial court proceedings.”).
¶ 19       But an on-the-record advisement and express waiver are not the only means by which a defendant can personally waive the right to presence. See, e.g., Taylor v. United States, 414 U.S. 17, 19 (1973) (holding that a defendant’s waiver of the right to presence may be effective even in the absence of an advisement by the court). If a defendant is not in custody, the defendant waives the right to be present by voluntarily absenting himself or herself from trial:
[W]here the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his rights to be present[.]
Campbell, 785 P.2d at 155 (alteration and emphasis added by Campbell) (quoting Diaz v. United States, 223 U.S. 442, 455 (1912)); see Taylor, 414 U.S. at 19; Stephenson, 165 P.3d at 869. The purpose of this principle is “to prevent the frustration of a trial in progress by the escape or absconding of the defendant.” Campbell, 785 P.2d at 155; see Price, 240 P.3d at 560; cf. Crim. P. 43(b)(1) (noting that a defendant waives his rights under this rule when he “[v]oluntarily absents himself after the trial has commenced”).
¶ 20       In addition, a defendant personally waives his or her constitutional right to be present by persisting in disruptive conduct that justifies exclusion from the courtroom after being warned by the court. See People v. Davis, 851 P.2d 239, 243 (Colo. App. 1993) (citing Illinois v. Allen, 397 U.S. 337, 343 (1970)); cf. Crim. P. 43(b)(2).
¶ 21       To summarize, if the defendant is not in custody and voluntarily absents himself or herself from trial, or if the defendant persists in disruptive conduct after being warned, the defendant effectively waives the constitutional right to be present. Otherwise, however, the record does not demonstrate a valid waiver of the constitutional right to be present unless the trial court advises the defendant of that right and obtains the defendant’s personal waiver of that right on the record.
2. Application
¶ 22       Both parties agree that Janis had a constitutional right to be present during the testimony of Logan, a witness who made serious accusations against her. At this stage of the criminal proceedings, there existed more than a minimal risk that Janis’s absence might impair her right to a fair trial. See Cardenas, ¶ 22. Indeed, a primary purpose of a defendant’s right to presence is to confront key witnesses against the defendant. See Gagnon, 470 U.S. at 526 (“The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment[.]”).
¶ 23       As a consequence, we must consider whether Janis waived her right through words or conduct. Janis was in the courtroom, in custody, and available for inquiry. Yet, before her removal, the trial court did not engage her in a colloquy to determine if she knowingly, intelligently, and voluntarily waived her right to be present. In that regard, this case resembles Campbell, where defense counsel informed the trial court that the defendant (who was in custody in the county jail) refused to appear for trial. See 785 P.2d at 155. The trial court there “made no effort to bring [the] defendant before it to determine if [the] defendant knowingly intended to waive his right to be present.” Id. After the defendant later appeared in the courtroom during voir dire but then chose to return to jail, “[a]gain, the trial court failed to inquire concerning [the] defendant’s understanding of the consequences of his decision.” Id. A division of this court held that “under these circumstances, the record fails to establish a voluntary, knowing, and intelligent waiver by [the] defendant of his right to be present at trial.” Id.; see also Larson, 911 F.2d at 396 (“Normally the court obtains a waiver of a defendant’s presence at trial from the defendant personally, in open court, and on the record.”); cf. Stephenson, 165 P.3d at 868-70 (holding that the defendant made a valid waiver of his right to be present where the trial court engaged in “lengthy and repeated advisements and inquiry into [the defendant’s] reasons for his decision”).
¶ 24       As in Campbell, Janis did not personally waive her right to be present on the record. And, as in Campbell, defense counsel’s representation that Janis did not wish to be present (and that no further record discussion was necessary) was insufficient to establish a valid waiver of her right to be present because this right cannot be waived by counsel alone. See also Gordon, 829 F.2d at 125 (“[I]t is clear that rather than permitting defense counsel to waive Gordon’s right to presence, the court should have held an on-the-record hearing to advise Gordon of his right to be present at voir dire and obtained a personal waiver in open court.”).
¶ 25       We are not persuaded by the People’s contention that Janis, through her conduct, voluntarily absented herself from trial. As discussed, such a waiver of the right to be present may occur when a defendant is not in custody and chooses not to appear for trial. See Price, 240 P.3d at 561 (concluding that the defendant, who was not in custody, voluntarily absented himself and thus waived his right to be present when he failed to appear on the second day of trial, attempted suicide, and left a note reflecting his decision not to attend the trial); Campbell, 785 P.2d at 155 (emphasizing that the Diaz rule concerning voluntary absence applies to a defendant “not in custody” (quoting Diaz, 223 U.S. at 455)) (emphasis added by Campbell). Janis, however, was in custody throughout the trial.
¶ 26       A defendant in custody “does not have control over his presence or absence.” Larson, 911 F.2d at 397 (citing Diaz, 223 U.S. at 455); see Gordon, 829 F.2d at 125 n.7 (explaining why “[t]he distinction between custodial and non-custodial defendants is an important one”). Although “there may be times when a defendant in custody could waive his right to be present[,] . . . it is certainly more difficult to establish that a defendant in custody has waived his right to be present.” Larson, 911 F.2d at 397. Because Janis was available and under the control of the authorities — but she was not advised of her right to be present and she did not personally waive her right on the record — the record does not establish a knowing, voluntary, and intelligent waiver of this fundamental right. See id. (“Because the record indicates that [the] defendant was in fact in custody during the trial, we conclude that a stronger showing than made in this case is necessary to establish that he waived his presence at trial.”); Campbell, 785 P.2d at 155 (holding that an in-custody defendant did not validly waive his right to be present where an advisement and personal waiver did not occur on the record); see also Curtis, 681 P.2d at 515 (“To establish intelligent, knowing waiver of a constitutional right, ‘the best means of demonstrating the defendant’s state of mind are his own declarations’ on the record.” (quoting State v. Noble, 514 P.2d 460, 462 (Ariz. 1973))).[4]
D. Reversal Is Necessary Because the Error Was Plain
¶ 27       As mentioned, the constitutional error must constitute plain error to require reversal in this case. Plain error is both obvious and substantial (i.e., “seriously prejudicial”). People v. Pollard, 2013 COA 31M, ¶¶ 39-43 (citation omitted).
1. Obviousness
¶ 28       For an error to be considered obvious, the action challenged on appeal must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law. Id. at ¶ 40.
¶ 29      It is well settled, and recognized in Colorado case law, that a defendant has a constitutional right to be present at critical stages of the trial (i.e., where the defendant’s absence may thwart the trial’s fundamental fairness and the defendant’s ability to defend against the charges). See, e.g., Luu, 841 P.2d at 273-75. It is also well settled that the testimony of a witness against the defendant constitutes a critical stage of the trial. See id. at 275 (“[T]he Confrontation Clause . . . guarantees the right to be present at trial to secure the opportunity for full and effective cross-examination of witnesses.”).
¶ 30       Additionally, Colorado cases have clearly held that courts must indulge every reasonable presumption against the waiver of fundamental constitutional rights. Curtis, 681 P.2d at 514; Campbell, 785 P.2d at 154. Colorado courts have also held that the record must affirmatively establish that a defendant’s waiver of the fundamental right to be present was voluntary, knowing, and intelligent. E.g., Campbell, 785 P.2d at 154. Relatedly, Colorado courts, for many years, have recognized that a defendant’s counsel may not waive the defendant’s constitutional right to be present at a critical stage of trial. See Curtis, 681 P.2d at 514; Penney, 146 Colo. at 101, 360 P.2d at 673.[5] Instead, Colorado cases “impose a duty on the trial court to advise the defendant on the record of the consequences of being absent from trial and to determine whether the absent defendant ‘knowingly intended to waive his right to be present.’” Stephenson, 165 P.3d at 868 (quoting Campbell, 785 P.2d at 155); see Price, 240 P.3d at 560.
¶ 31       As discussed, the exceptions to the above approach identified in Colorado cases — where a defendant not in custody voluntarily absents herself from trial or persists in disruptive conduct after being warned — do not apply to this case. Finally, cases setting forth these principles (including Luu, Curtis, Price, Stephenson, and Campbell) were announced before Janis’s trial. Accordingly, although we acknowledge that the trial court acceded to defense counsel’s requests, we conclude that the constitutional error here meets the obviousness standard.
2. Prejudicial Impact
¶ 32       To qualify as substantial error under the plain error test, an error must “so undermine the fundamental fairness of the trial itself . . . as to cast serious doubt on the reliability of the judgment of conviction.” Pollard, ¶ 43 (alterations in original) (citation omitted).
¶ 33       To reiterate, Logan’s testimony was a critical stage of trial. He testified to events leading up to the stabbing that directly contradicted Janis’s version of events. For instance, Logan testified that, as Janis walked by, she asked if he had seen a mutual acquaintance, and he replied “no” and then “ignored her.” In contrast, Janis testified that, as she walked by, Logan said he was going to “knock that baby out of you, bitch.” Logan also denied assaulting Janis earlier that night, while she testified that he had done so.
¶ 34       Janis’s absence during Logan’s testimony compromised her ability to confront his allegations, communicate with her attorney, and assist in cross-examination. See Luu, 841 P.2d at 275. Similarly, Janis’s ability to respond to Logan’s allegations during her subsequent testimony was hampered. We further note that those Colorado cases that have held that a defendant’s absence was not reversible error concerned less critical stages of the proceedings. See, e.g., id. (holding that defendant’s interpreter’s absence during closing arguments and the giving of jury instructions was harmless); Munsey, 232 P.3d at 120 (concluding that the defendant’s absence when court responded to jury question was harmless); Harris, 914 P.2d at 437 (holding that the defendant’s absence from suppression hearing proceedings at which purely legal issues were argued was harmless).
¶ 35       According to the People, the evidence that Janis stabbed Logan was overwhelming. We agree. In fact, Janis herself testified to stabbing him, and surveillance video captured the incident. As for the prosecution’s burden to prove beyond a reasonable doubt that Janis did not act in self-defense, however, the evidence was not overwhelming. See People v. Pickering, 276 P.3d 553, 555-56 (Colo. 2011) (holding that, as to crimes requiring intent, self-defense is an affirmative defense, and the prosecution must prove that the defendant did not act in self-defense). The trial court found (and the prosecution did not dispute) that sufficient evidence of self-defense was admitted to submit this question to the jury. In light of Janis’s testimony, a reasonable juror could have found that she acted in self-defense.
¶ 36       Consequently, we conclude that Janis’s absence at a critical stage of trial, without a valid waiver of her right to be present, so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. We therefore must recognize plain error and reverse Janis’s conviction.
III. Motion to Suppress
¶ 37       Because the issue is likely to arise on remand, we address Janis’s contention that the trial court erred in failing to suppress her statement to police that she had a knife and the knife itself. She bases her arguments on both the Fourth and Fifth Amendments. We perceive no error.
A. Standard of Review
¶ 38       When reviewing a trial court’s order denying a motion to suppress evidence, we defer to the court’s findings of fact but review de novo its conclusions of law. People v. Allen, 199 P.3d 33, 35 (Colo. App. 2007).
B. Relevant Factual and Procedural History
¶ 39         Immediately after the stabbing, a police radio call reported the stabbing, its location, and that the suspected assailants were a middle-aged Hispanic female wearing black and a Hispanic male who were traveling by foot eastbound on Colfax. Within minutes, three officers walking westbound intercepted Janis and her friend.
¶ 40       One of the officers ordered Janis to stop, sit on the ground, and keep her hands up. The officer then handcuffed her. The officer’s weapon was holstered, and no physical force was used. (The officer testified at the motions hearing that Janis and her friend matched the description aired in the radio call.)
¶ 41       The officer asked Janis if she had any weapons on her because the radio call had mentioned a stabbing. Janis replied that she had a knife and, at the same time, she pulled a fixed-blade knife from her waistband. The officer told her to drop it, and she did.
¶ 42       The first officer left Janis in the custody of another officer. The second officer testified that he initially believed Janis was the victim. Around this time, however, an eyewitness to the stabbing approached the second officer and identified Janis as the person who stabbed Logan.
¶ 43       At no point during the preceding interaction did the officers give Janis the advisement required by Miranda v. Arizona, 384 U.S. 436 (1966).
¶ 44       Before trial, Janis moved to suppress her statement to police concerning the knife and the knife itself. At the end of the suppression hearing, the court rejected her Fourth Amendment claim, finding that the officers had reasonable suspicion to conduct an investigatory stop of Janis and that ordering her to the ground and using handcuffs did not exceed the permissible scope of the stop. The court also rejected her Fifth Amendment claim, finding that even though Janis was in custody for purposes of Miranda, the officer’s asking her whether she had a weapon did not constitute interrogation. At trial, both Janis’s statement that she had a knife and the knife were admitted into evidence.
C. Janis’s Fourth Amendment Argument
¶ 45       Janis contends that the police violated her rights under the Fourth Amendment when she was ordered to the ground and handcuffed because these measures exceeded the bounds of a permissible investigatory stop and the police lacked probable cause to arrest her at that point. Therefore, Janis contends the trial court should have suppressed her statement about the knife and the knife itself.
¶ 46       The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. A police officer having less than probable cause for arrest may conduct an investigatory stop of a person if three conditions are met: (1) the officer must have a reasonable suspicion that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. People v. Revoal, 2012 CO 8, ¶ 10; People v. Weston, 869 P.2d 1293, 1296 (Colo. 1994).
¶ 47       Janis contends that the third criterion of an investigatory stop was not satisfied here. She argues that the show of force was not “reasonably necessary under the circumstances,” thereby challenging whether the scope and character of the stop were reasonably related to its purpose. Janis asserts that one officer initially believed that she was a victim, she was cooperative, and she was outnumbered by the officers. Therefore, she concludes, when the officer ordered her to the ground and handcuffed her, this action exceeded what was reasonably necessary for the protection and safety of the investigating officers and elevated the stop to an arrest in the absence of probable cause.
¶ 48       There must be a reasonable connection between the scope and character of the investigatory stop and its objective. People v. Ingram, 984 P.2d 597, 603 (Colo. 1999). During an investigatory stop, an officer may take reasonable measures to ensure his or her own safety and the public’s safety. United States v. Hensley, 469 U.S. 221, 235 (1985); People v. Smith, 13 P.3d 300, 305 (Colo. 2000). The use of physical restraint, handcuffs, and weapons in an investigatory stop is justified when, under the circumstances, such force constitutes a “reasonable precaution for the protection and safety of the investigating officers.” Smith, 13 P.3d at 305 (citation omitted); see also United States v. Perdue, 8 F.3d 1455, 1463-64 (10th Cir. 1993) (describing a trend toward allowing police to use handcuffs or place a suspect on the ground during an investigatory stop and collecting cases on the point). In addition, a protective search conducted in conjunction with an investigatory stop is permitted when the officer has a reason to believe that the suspect may be armed and dangerous. Weston, 869 P.2d at 1297 (concluding officer was justified in searching for weapons during investigatory stop of car where occupants of car had been involved in a stabbing which took place in the same area a short time earlier).
¶ 49       Like the trial court, we conclude that the use of force in this case was permissible. Because of the immediacy and seriousness of the police radio call, the circumstances justified the heightened degree of force as a “reasonable precaution for the protection and safety of the investigating officers.” Smith, 13 P.3d at 305 (citation omitted). The officers had just received a call reporting a stabbing nearby and describing two suspects headed quickly eastbound when they stopped Janis and her friend, who matched the suspects’ description aired on the call and who were jogging eastbound. The purpose of the stop — to question Janis about her involvement in the nearby stabbing — was a reasonable law enforcement objective. See People v. Archuleta, 980 P.2d 509, 516 (Colo. 1999). In carrying out this purpose, the officer reasonably protected himself until he was able to confirm or dispel his suspicion that Janis was involved in the stabbing. See id.
¶ 50       Relatedly, the officer’s asking Janis, “Do you have any weapons on you?” in conjunction with the investigatory stop was permissible because the officer had reason to believe Janis might be armed. See Weston, 869 P.2d at 1297. Thus, the scope of and measures used during the stop were reasonably related to the legitimate purpose of the stop. See id. Because the intrusion did not exceed the permissible bounds of an investigatory stop (for which probable cause was not required), we need not address whether probable cause existed for an arrest.
D. Janis’s Fifth Amendment Argument
¶ 51       Janis contends that the officer’s question, “Do you have any weapons on you?” — in the absence of Miranda warnings — violated her Fifth Amendments rights. Again, we are not persuaded.
¶ 52       To protect a suspect’s Fifth Amendment right against self-incrimination, police must provide an advisement before custodial interrogation. Miranda, 384 U.S. at 471. “Miranda protections only apply when a suspect is subject to both custody and interrogation.” Effland v. People, 240 P.3d 868, 873 (Colo. 2010).
¶ 53       A defendant is in custody if “under the totality of the circumstances, a reasonable person in the defendant’s position would consider himself to be deprived of his freedom of action to the degree associated with a formal arrest.” People v. Matheny, 46 P.3d 453, 468 (Colo. 2002). A person may be in custody for purposes of Miranda even if he or she has not been arrested in the Fourth Amendment sense. See Perdue, 8 F.3d at 1463-64 (citing Berkemer v. McCarty, 468 U.S. 420, 441 (1984)). Our supreme court has explained why that is so:
While exhibiting guns or using handcuffs may at times amount to reasonable safety precautions that do not necessarily elevate a seizure based on less than probable cause to a full arrest, Fifth Amendment protections are concerned with the likely coercive effect of this degree of force on a reasonable person in the suspect’s position. Neither the reasonableness of the force nor its legal justification alters its likely coercive effect.
People v. Mangum, 48 P.3d 568, 572 (Colo. 2002).
¶ 54       The public safety exception to the Miranda rule, however, permits custodial questioning directed to obtaining information important to protecting the safety of the public or the officers engaged in immediate, on-scene investigation of a crime. People v. Requejo, 919 P.2d 874, 879 (Colo. App. 1996); see also New York v. Quarles, 467 U.S. 649 (1984). Where the officer has reasonable grounds to believe a suspect has a weapon, this exception to Miranda allows an officer to ask the suspect if he or she has a weapon without first giving Miranda warnings. United States v. Lackey, 334 F.3d 1224, 1227-28 (10th Cir. 2003) (collecting similar cases); Allen, 199 P.3d at 36; Requejo, 919 P.2d at 879.
¶ 55       The determinative question is whether the officer’s questioning related to an objectively reasonable need to protect the police or the public from immediate danger associated with a weapon. Allen, 199 P.3d at 36. The officer’s inquiry must be limited to accomplishing the officer’s defensive purpose and must not be designed solely to elicit testimonial evidence from a suspect. See Ingram, 984 P.2d at 605; Requejo, 919 P.2d at 879.
¶ 56       We conclude that Janis was in custody for purposes of Miranda at the time of the questioning at issue because she had been ordered to the ground and handcuffed. But we also conclude that the public safety exception applied. The officers responded to a report of a stabbing, contacted Janis shortly thereafter and near the location of the stabbing, and had reason to believe Janis was involved in that crime. We agree with the trial court that the officer’s question to Janis, “Do you have any weapons on you?” was for the purpose of officer safety, not fact gathering for purposes of prosecution. See Lackey, 334 F.3d at 1227 (“The focused question of the officers — ‘Do you have any guns or sharp objects on you’ — addressed a real and substantial risk to the safety of the officers and Defendant[.]”); Requejo, 919 P.2d at 879 (concluding that officer’s simple question directed towards locating a weapon was legitimately asked for officer safety reasons). Furthermore, we agree with the trial court that, under the circumstances, the officer could have patted her down for weapons and would have found the knife in any event. See Lackey, 334 F.3d at 1228.
¶ 57       Because we discern no violation of the Fourth or Fifth Amendments, we affirm the denial of Janis’s motion to suppress.
IV. Other Issues Raised on Appeal
¶ 58       We decline to consider Janis’s other challenges to her conviction because those issues are not likely to recur on retrial under the same circumstances presented in this appeal. See, e.g., People v. Stephenson, 56 P.3d 1112, 1121 (Colo. App. 2001).
V. Conclusion
¶ 59       The judgment is reversed, and the case is remanded for a new trial.
 
JUDGE TERRY and JUDGE FREYRE concur.

1 Later during trial, a defense expert witness testified that Janis suffered from PTSD due to multiple childhood traumas.
2 The record is unclear as to whether this colloquy occurred at the bench or in open court, i.e., within Janis’s range of hearing.
3 Other decisions that “are so inextricably linked with a defendant’s fundamental constitutional rights that only the defendant is entitled to make them” include: (1) whether to waive the right to counsel; (2) what plea to enter; (3) whether to waive the right to a jury trial; (4) whether to testify; and (5) whether to appeal. People v. Arko, 159 P.3d 713, 724 (Colo. App. 2006), rev’d on other grounds, 183 P.3d 555 (Colo. 2008); see People v. Curtis, 681 P.2d 504, 511 (Colo. 1984).
4 The People do not argue, and the record does not show, that Janis waived her right to be present through disruptive behavior. Further, we reject the People’s reliance on United States v. Gagnon, 470 U.S. 522 (1985), for the proposition that Janis’s failure to object to her removal from the courtroom constituted a waiver of her constitutional right to be present. In the section of the decision cited by the People, the Court addressed the defendants’ rights under Fed. R. Crim. P. 43, not under the Constitution. Id. at 528­29. Prior to that discussion, the Court had already determined that the defendants did not have a constitutional right to be present at the conferences at issue. Id. at 526-27. In contrast, the People do not dispute Janis’s constitutional right to be present for Logan’s testimony.
5 Our supreme court did not alter this principle in Luu v. People, 841 P.2d 271 (Colo. 1992). Because it concluded that any constitutional error was harmless, the court did not address whether the defendant had waived his right to be present. Id. at 273 n.4. Also, a defendant’s constitutional right to be present at a critical stage of trial (e.g., during the confrontation of witnesses) should be distinguished from the constitutional right to confront witnesses. It is well established that a defendant’s counsel may waive the defendant’s confrontation right. See, e.g., Cropper v. People, 251 P.3d 434, 435 (Colo. 2011).