JUSTICE HOOD delivered the Opinion of the Court.
¶ 1 Erin Janis stabbed a man outside of a bar in Denver. As a result, the People charged Janis with first degree assault. She claimed self-defense, and the case went to trial. Although in custody, Janis asked through trial counsel to leave the courtroom during the victim's testimony, ostensibly because she feared it might trigger her post-traumatic stress disorder ("PTSD"). Without *1200 first advising her of her right to remain or inquiring with her directly about her desire to leave, the trial court granted her request. The jury found Janis guilty, and the trial court ultimately sentenced her to twelve years in prison.
¶ 2 On appeal, Janis argued, in part, that she did not validly waive her right to be present during the victim's testimony. More specifically, she contended that the trial court should have advised her of the right and then engaged her in a colloquy about her decision to waive it. By failing to do so, she asserted, the trial court failed to secure a valid waiver and thus committed reversible error.
¶ 3 A division of the court of appeals agreed with her. The division rejected the People's argument that Janis had waived the issue or invited any error, concluding instead that Janis's right to be present was "a personal right" that couldn't be waived through counsel. People v. Janis , 2016 COA 69, ¶ 11, --- P.3d ----.
¶ 4 Having granted the People's petition for certiorari, we hold that a formal advisement of the right to be present at trial is not a prerequisite to a valid waiver of that right, even when a defendant is in custody. Ultimately, the touchstone is whether, under the totality of the circumstances, the waiver was knowing, intelligent, and voluntary. And here we conclude that the record supports the People's contention that Janis's waiver was knowing, intelligent, and voluntary.
¶ 5 Accordingly, we reverse the judgment of the court of appeals and remand to address any previously unresolved issues.
I. Facts and Procedural History
¶ 6 The defendant, Erin Janis, used a knife to stab a man outside of a bar on Colfax Avenue in Denver. The People charged her with first degree assault under section 18-3-202(1)(a), C.R.S. (2018). At trial, Janis conceded that she stabbed the victim, but she claimed she did so in self-defense. Janis remained in custody throughout the trial.
¶ 7 Janis and her counsel repeatedly alerted the court to concerns about Janis's mental health. During pretrial proceedings, Janis submitted to two mental health evaluations, one for competency and one to more broadly examine her "mental condition." The evaluator and the court found her competent to proceed. At trial, before testifying in her own defense, Janis informed the court that she was taking several prescribed medications but that they were not interfering with her ability to think or understand the trial proceedings. Janis did not argue that she was legally insane at the time of the alleged offense.
¶ 8 On the first day of trial, defense counsel told the court that Janis suffers from severe PTSD resulting from childhood trauma. Defense counsel further explained that, according to a forensic psychologist who had examined Janis, the evidence at trial might trigger a need for Janis to excuse herself from the courtroom. Without objection from the People (who noted her right to be present), the court eventually adopted defense counsel's suggestion for a protocol: If Janis became uncomfortable, she would tell her lawyer, and he would then approach the bench and tell the court. The court stated, "if she chooses for her medical, emotional-for whatever reason, not to be at certain parts, that's her choice."
¶ 9 On the second day of trial, the People called the victim to testify. As he took the stand, defense counsel explained to the court, "My client is very uncomfortable. She would like to leave the courtroom now." The prosecutor made a record that Janis was leaving the courtroom voluntarily. The record is unclear as to whether the defendant was within earshot when this exchange occurred. What is clear, however, is that the trial court neither provided Janis with an advisement, nor conducted any colloquy with Janis to confirm that she knowingly, intelligently, and voluntarily waived her right to be present during the victim's testimony.
¶ 10 The prosecutor observed that the victim would need to identify Janis as the person who stabbed the victim, meaning that either defense counsel could "stipulate to that identification, or [Janis] needs to be brought back out for ID." Defense counsel said that he couldn't stipulate without consulting his client. After conferring with Janis, *1201 he informed the court, "Ms. Janis says, if her only options are to be [dragged] back into the courtroom so [the victim] can identify her, she will stipulate." At the prosecutor's request, the court noted that Janis's absence was "an active choice." The victim then testified that Janis stabbed him during an argument.
¶ 11 Following the victim's testimony, Janis returned to the courtroom. She later testified in her own defense, claiming that ten minutes before the incident, the victim had hit her in the stomach when she was seven months pregnant. She also testified that just before she stabbed him, he said, "I'm going to knock that baby out of you, bitch." Finally, she testified that two months earlier, she had been raped and that the victim had "helped" the person who raped her.
¶ 12 On appeal, the division below reviewed the trial court's decision for plain error, Janis , ¶ ¶ 10-12, and noted that before Janis was removed, "the trial court did not engage her in a colloquy to determine if she knowingly, intelligently, and voluntarily waived her right to be present," id. , ¶ 23. The division concluded that "[b]ecause Janis was available and under the control of the authorities - but she was not advised of her right to be present and she did not personally waive her right on the record - the record does not establish a knowing, voluntary, and intelligent waiver...." Id. , ¶ 26. And the division held that the error was plain because (1) it is well-settled that defendants are constitutionally entitled "to be present at critical stages of the trial," and (2) "Janis's absence during [the victim's] testimony compromised her ability to confront his allegations, communicate with her attorney, and assist in cross-examination." Id. , ¶ ¶ 27, 29, 34. On the latter point, the division suggested that Janis's absence during the victim's testimony could have harmed her ability to rebut his account in her own self-defense testimony. Id. , ¶ 34 -35.
¶ 13 We granted the People's petition for our certiorari review.[1]
II. Standard of Review
¶ 14 Whether a trial court violated a defendant's constitutional right to be present at trial is reviewed de novo. Zoll v. People , 2018 CO 70, ¶ 15, 425 P.3d 1120, 1125.
III. Analysis
¶ 15 We begin by reciting the constitutional basis for a defendant's right to be present at trial. After acknowledging the personal nature of this fundamental right, we address whether a formal advisement is necessary to establish a valid waiver, particularly when a defendant is in custody. Our answer is no. Furthermore, we conclude that the record before us demonstrates that Janis's waiver was knowing, intelligent, and voluntary.
A. The Constitutional Basis for a Criminal Defendant's Right to Be Present at Trial
¶ 16 The Sixth Amendment guarantees defendants the right to be present during the taking of evidence at trial. United States v. Gagnon , 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment...."); Illinois v. Allen , 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial.").[2] This right is personal to the defendant, and counsel may not waive it for the defendant. See People v. Curtis , 681 P.2d 504, 511 (Colo. 1984) (citing Penney v. People , 146 Colo. 95, 360 P.2d 671 (1961) ).
*1202 ¶ 17 That said, the right to be present is not absolute. A defendant may waive her right to be present either expressly or through her conduct. See Taylor v. United States , 414 U.S. 17, 19 n.3, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (concluding that a non-custodial defendant can waive his right to be present by failing to appear after his trial has commenced); Allen , 397 U.S. at 346, 90 S.Ct. 1057 (concluding that a defendant can waive his right to be present by persisting in disruptive behavior).
¶ 18 Nonetheless, Janis maintains that there must be an advisement on the record for an in-custody, available defendant to validly waive such a fundamental constitutional right. We turn to that more discrete issue now.
B. While Formal Advisement Is Preferred, It Is Not Essential
¶ 19 Formal, on-the-record advisements by the court are sometimes used in other contexts "to ensure that waiver of a fundamental constitutional right is intelligent and knowing, to preclude postconviction disputes between defendant and counsel over the issue, and to facilitate appellate review." Curtis , 681 P.2d at 515. The trial court generally conducts these advisements through a colloquy with the defendant out of the presence of the jury. See id. (" '[T]he best means of demonstrating the defendant's state of mind are his own declarations' on the record." (quoting State v. Noble , 109 Ariz. 539, 514 P.2d 460, 462 (1973) ) ); see also People v. Arguello , 772 P.2d 87, 95-96 (Colo. 1989) (pointing to "a list of questions that a trial judge should ask the defendant" when conducting a formal advisement regarding the right to counsel).
¶ 20 While such an advisement is undoubtedly the better practice, we see no constitutional basis for a per se rule requiring one in this context. On the contrary, if we return to the groundbreaking case establishing modern waiver doctrine, Johnson v. Zerbst , we see emphasis on the ad hoc nature of the waiver inquiry: While courts indulge every reasonable presumption against the waiver of a fundamental constitutional right, "[t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
¶ 21 We find this sentiment echoed in the voluntary absence cases, despite similar arguments that waiver may not occur without an express warning by the trial court. Taylor, 414 U.S. at 19-20, 94 S.Ct. 194 (rejecting the defendant's assertion that there can be no effective waiver, "unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence and thereby effectively foreclose his right to testify and to confront personally the witnesses against him"); see also United States v. Riddle , 249 F.3d 529, 534-35 (6th Cir. 2001) ("To hold that such a waiver of a defendant's ... presence would be effective only after an on-the-record colloquy with the defendant would create a burdensome and impractical rule.").
¶ 22 Notably, neither the U.S. Supreme Court nor this court has held that, as a necessary precondition to a valid waiver of the right to be present at trial, there must be a formal, on-the-record advisement comparable to those commonly used in Colorado to secure the waiver of the right to counsel or waiver of the right to testify. See Arguello , 772 P.2d at 95-96 (adopting a formal advisement requirement to waive right to counsel); Curtis , 681 P.2d at 512, 514-15 (adopting a formal advisement requirement regarding the right to testify). Even for waivers of the right to counsel and the right to testify, we have held that the lack of a formal advisement does not automatically render such waivers invalid. See Arguello , 772 P.2d at 96 ("A court's failure to comply substantially with [the formal advisement] requirement does not automatically render the waiver [of the right to counsel] invalid...."); People v. Mozee , 723 P.2d 117, 124 (Colo. 1986) ("We conclude, however, that the absence of such an on-the-record advisement and determination of waiver before the defendant testifies will not automatically render a defendant's *1203 waiver [of his right not to testify] invalid."). Ultimately, we must consider the totality of the circumstances to ascertain the validity of the waiver. See Arguello , 772 P.2d at 96.
¶ 23 In keeping with our precedent eschewing rigidity, we join those jurisdictions that have rejected the necessity of a formal advisement to effect a valid waiver of the right to be present, even for a defendant in custody. See, e.g. , People v. Gutierrez , 29 Cal.4th 1196, 130 Cal.Rptr.2d 917, 63 P.3d 1000, 1005, 1008 (2003) (disagreeing with the argument that "trial courts must personally confront a defendant to determine whether the defendant desires to be voluntarily absent from court proceedings" and concluding that "[a] person in custody, as any person, can voluntarily choose to be absent"); Matias v. State , 73 Haw. 147, 828 P.2d 281, 283 (1992) (declining to apply "a rigid rule of law that, so long as a defendant is in custody, the right to be present at the trial can only be waived in open court").
¶ 24 In reaching this conclusion, we acknowledge that some courts have forged a different path when a defendant is in custody. See, e.g. , United States v. Gordon , 829 F.2d 119, 125 (D.C. Cir. 1987) ("The practice of obtaining open court waivers is, as we have noted, particularly warranted in cases like this where the defendant is not out on bail, but remains in custody and readily available to the court."). But any distinction between the absence of custodial and non-custodial defendants is predicated on the notion that in-custody defendants don't "have control over [their] presence or absence." See Larson v. Tansy , 911 F.2d 392, 397 (10th Cir. 1990) (citing a string of cases holding that an in-custody defendant can never waive her right to be present due to a lack of control over her presence or absence). That was not the case here. Instead, the trial court understandably, and perhaps even predictably, sought to accommodate Janis's desire to avoid a breakdown in the presence of the jury. A defendant voicing such concerns surely exercises some measure of control over her presence in or absence from the courtroom even when in custody. To presume otherwise would be tantamount to presuming that, if push comes to shove, judges and law enforcement are at liberty to simply bind and gag defendants to force them to appear regardless of any malady or potential disruption. The U.S. Supreme Court long ago acknowledged the absurdity of that option. See Allen , 397 U.S. at 342, 90 S.Ct. 1057 (rejecting the contention that the Sixth Amendment or any of the Court's precedent could so limit a trial judge's ability to conduct a criminal trial that her "ultimate remedy when faced with an obstreperous defendant ... is to bind and gag him").
¶ 25 Therefore, we decline to adopt a per se rule requiring a formal, on-the-record advisement in this context.[3]
C. The Record Demonstrates That the Defendant's Waiver Was Valid
¶ 26 Still, a criminal defendant's waiver of a fundamental constitutional right is valid only when the record as a whole demonstrates that the waiver was knowing, intelligent, and voluntary. Mozee , 723 P.2d at 121 n.4. And "in general the burden is on the prosecution to show [the] effective waiver of a fundamental right." Curtis , 681 P.2d at 515 n.16 (citing Barker v. Wingo , 407 U.S. 514, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) ). But we have never held that the People may not meet their burden to prove the elements of a valid waiver through the statements of counsel and circumstantial evidence.
¶ 27 We acknowledge that People v. Walker and Moore v. People suggest that the validity of Janis's alleged waiver may not be contested on direct appeal. See People v. Walker , 2014 CO 6, ¶ 1, 318 P.3d 479, 481 ; Moore v. People , 2014 CO 8, ¶ 3, 318 P.3d 511, 514. Those holdings rested on the observation that "a defendant's challenge to the knowing, voluntary, and intelligent waiver of the right to testify likely will require a post-conviction court to look ... into facts that *1204 the defendant brings forward that are not contained in the direct appeal record." Moore , ¶ 17, 318 P.3d at 518. Here, however, Janis's challenge relies solely on facts contained in the record before us. Given the unique framing of her challenge, we find it appropriate to address waiver now, on direct appeal.
¶ 28 So, with these thoughts in mind, we turn to the elements of a valid waiver. We have defined "knowing, intelligent, and voluntary" as follows:
• "knowingly" means that "the person waiving the particular right must 'know' of the existence of the right and any other information legally relevant to the making of an informed decision either to exercise or relinquish that right";
• "intelligently," means that "the person waiving that right must be fully aware of what he is doing and must make a conscious, informed choice to relinquish the known right";
• "voluntarily," means that the person waiving the right has "not [been] coerced by the state either physically or psychologically."
Mozee , 723 P.2d at 121 n.4. Notably, "intelligently" does not mean wisely. See People v. Johnson , 2015 COA 54, ¶ 18, 356 P.3d 1024, 1030 ; People v. Smith , 881 P.2d 385, 388 (Colo. App. 1994). Thus, we make no inquiry into the wisdom of Janis's decision. We now apply these definitions to the facts of this case.
¶ 29 First, we conclude Janis acted knowingly. Janis appears to have known she had a right to be present at trial. After all, she attended all but one pretrial proceeding and was present for the entire trial, except the victim's testimony. In addition, the People endorsed the victim as a witness, which suggests that defendant knew in advance he would testify at trial against her, information arguably "legally relevant to the making of an informed decision either to exercise or relinquish [her] right" to be present. See Mozee , 723 P.2d at 121 n.4.
¶ 30 Second, we conclude Janis acted intelligently. The record demonstrates that Janis understood what she was doing. Janis was evaluated and deemed competent to stand trial, and she later confirmed that her medications were not interfering with her ability to think or understand the trial proceedings. The record also demonstrates that she made a conscious choice not to be present. The exchange about identification among defense counsel, the prosecution, and the court after Janis left the courtroom makes this particularly clear. Defense counsel refused to stipulate to identification without consulting Janis. After a brief recess to allow defense counsel to confer with Janis, defense counsel explained: "Judge, Ms. Janis says, if her only options are to be [dragged] back into the courtroom so [the victim] can identify her, she will stipulate." This exchange demonstrates that Janis understood that she had two options (to be present or not) and that she made a conscious choice not to be present. Finally, we can infer conscious, informed decision-making from the defense's advanced planning. The defense clearly anticipated that Janis may need to be absent for part of the trial, as counsel sought the protocol for excusing Janis on the first day of trial.
¶ 31 Third, we conclude Janis acted voluntarily. The record reveals that Janis left of her own volition. Indeed, defense counsel told the court: "[Janis] would like to leave the courtroom now." The record does not suggest that any physical or psychological coercion influenced her decision.
¶ 32 Janis argues that "a personal inquiry could have enabled the trial court to offer reasonable alternatives and/or accommodations to address her fears and the adverse effects of her severe PTSD to allow her to be present during this critical trial testimony." To the extent that this argument may implicate the intelligence or voluntariness of her waiver, we note that defense counsel never requested additional accommodations.
¶ 33 In a similar vein, Janis argues that defense counsel's representations of her desire to leave the courtroom are not adequate to establish knowledge, intelligence, and voluntariness with respect to her waiver. Although we indulge every reasonable presumption against waiver, we do not find it reasonable to presume that defense counsel *1205 failed to adequately represent Janis's interests. Cf. Strickland v. Washington , 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."). To the extent that Janis would like a court to consider her counsel's effectiveness, she will need to directly challenge his effectiveness.[4]
¶ 34 Therefore, based on the record before us, we conclude that Janis's waiver was valid.
IV. Conclusion
¶ 35 We hold that a formal advisement of the right to be present at trial is not a prerequisite to a valid waiver of that right, even when a defendant is in custody. Ultimately, the touchstone is whether, under the totality of the circumstances, the waiver was knowing, intelligent, and voluntary. And here we conclude that the record supports the People's contention that Janis's waiver was knowing, intelligent, and voluntary.
¶ 36 Accordingly, we reverse the judgment of the court of appeals and remand to address any previously unresolved issues.

We granted certiorari to review two issues:
1. Whether an in-custody defendant's waiver of her right to be present at trial must be preceded by a formal advisement and waiver process, even though the record shows that the defendant chose not to be present during the victim's testimony.
2. [REFRAMED] Whether there is sufficient evidence on the record to determine, under the totality of the circumstances, that the defendant knowingly, intelligently, and voluntarily waived her right to be present during the victim's testimony.

Crim. P. 43(a) also requires as much, subject to a few exceptions.

We observe that our conclusion is consistent with Crim. P. 43(b)(1) ("The trial court in its discretion may complete the trial, and the defendant shall be considered to have waived his right to be present, whenever a defendant, initially present ... [v]oluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to remain during the trial....").

We need not, and therefore do not, address whether post-conviction relief could be available to Janis.