## No. 25869

## The People of the State of Colorado v. Robert Henry Mullins
(532 P.2d 733)

Decided March 10, 1975.

24

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Charles F. Willett, for defendant-appellant.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

Defendant was found guilty by a jury of first-degree murder. The jury set the penalty at life imprisonment. On this appeal, defendant advances several grounds for reversal, none of which have merit. The judgment of the trial court is therefore affirmed.

Defendant's ex-wife and Dean Johnson were married in Delta, Colorado on August 27, 1972. After a short trip to Grand Junction, they returned on August 28, 1972 to their home in Delta. Late that evening, the defendant knocked on their front door and asked his ex-wife if he could see Dean Johnson. She closed the door and went to the bedroom to wake up her new husband. The defendant opened the front door and entered the house. She awakened her husband and he got out of the bed. The defendant then appeared, pulled a pistol from his pocket, and fired it at Dean Johnson until all of the cartridges were spent. Dean Johnson

fell to the floor mortally wounded. The defendant remained at the scene until the police arrived and arrested him.

After arrest, and while a police officer was putting handcuffs on him, the defendant spontaneously stated "I warned that son of a bitch to stay away from her." A short time later, the defendant asked if the police officer would loosen the handcuffs on his wrists, and the defendant then added the spontaneous comment that he was not going to run because he got the guy he wanted. These statements were not made as a response to any questions by police officers or anyone else.

After the prosecution concluded its case in chief, the defendant rested without testifying himself or offering any defense testimony.

The public defender represented this defendant at trial, filed post-trial motions, and on this appeal prepared and filed briefs. Thereafter, the public defender's motion to withdraw was granted, and the trial court appointed present counsel for the purpose of this appeal.

I.

Although one of the defendant's grounds in his motion for a new trial was that the trial court erred in refusing defendant's tendered instruction and verdict form on voluntary manslaughter, his appeal brief does not advance this as a basis for reversal. Nevertheless, defendant's present counsel on oral argument expressed the view that on appeal this court should consider this alleged error. Under the circumstances of this case, we have examined the record on this point and have concluded that the trial court did not commit reversible error as to this matter.

The evidence as presented here fails to reveal anything which would support or justify a manslaughter instruction to the jury. Our manslaughter statute, section 18-3-104, C.R.S. 1973, specifies that to be guilty of manslaughter, the accused must with intent kill another person under circumstances indicating a "sudden heat of passion caused by a serious and highly provoking act, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person." This statute also states that "if between the provocation and the killing there is an interval sufficient for the voice of reason and humanity to be heard, the killing is murder."

The uncontroverted evidence here is absolutely devoid of any provoking act on the part of the victim, or that any provocation occurred which could excite an irresistible passion in a reasonable person. Rather, the evidence shows that the victim, who was in bed asleep, was awakened by his wife, had just got out of bed, and while standing next to the bed, was shot down by the defendant. From all the evidence, the inferences are strong that the defendant first secured the weapon and then went to the victim's house for the purpose of killing him. This is murder and nothing else. Only in those cases where there is evidence — even though it be slight — that there was a serious and highly provoking act by the victim against the accused which could possibly excite an irresistible passion, is a manslaughter instruction required when requested. *People v. Miller,* 187 Colo. 239, 529 P.2d 648 (1974), *Hampton v. People,* 171 Colo. 153, 465 P.2d 394 (1970), and *Read v. People,* 119 Colo. 506, 205 P.2d 233 (1949).

■ Even had there existed in this case some slight indications of the elements of manslaughter, the refusal of the trial judge to give a manslaughter instruction would have been no more than harmless error. Here, the jury was instructed on first-degree murder and second-degree murder. It found the defendant guilty of first-degree murder, the most serious offense. The jury rejected the less serious offense of two alternatives. If the jury had been given three alternatives, the resulting verdict would have undoubtedly been the same as here.

## II.

■ When the police arrived at the scene of the crime, they were informed by Mrs. Johnson as to the preceding events. A police officer immediately asked defendant where the gun was and the defendant promptly responded that he had thrown it through the window. Defendant objects that this testimony was admitted in violation of his rights under the Fifth Amendment, in that no warnings were given in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The People contend that this situation does not fall within the ambit of *Miranda,* because this was not a custodial interrogation, but merely the act of a prudent officer who wished to insure that

no further violence occurred by attempting to locate the weapon as expeditiously as possible.

In *State v. Hudson,* 325 A.2d 56 (Me. 1974), the Supreme Court of Maine discussed thoroughly the varying approaches to this problem in the light of *Miranda.* That court discussed the applicability of the rationale of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which allows a limited protective search for weapons when the officer has a reasonable belief that the person is armed and is dangerous. In *State v. Hudson, supra,* it is stated:

"We have no doubt that policy officers, acting in *Terry* situations, may properly ask questions directed toward ascertaining the presence of weapons which present a danger to the officer or others nearby. The questions, however, must be strictly limited to accomplishing that proper defensive purpose . . . they may not be in the nature of fact gathering as a part of the preparation of proof to be used against a defendant in a charge which had been lodged against him."

We agree with this rationale. The situation involved here is not the type of situation involving unlawful police tactics which *Miranda* was designed to remedy. The actions of the police in attempting to locate the weapon, in order to protect themselves and the public, was entirely reasonable. *See also People v. Toler,* 45 Mich. App. 156, 206 N.W.2d 253 (1973); *People v. Brown,* 131 Ill. App.2d 244, 266 N.E.2d 131 (1970); *United States v. Castellana,* 500 F.2d 325 (5th Cir. En Banc, 1974).

## III.

During oral argument, it was suggested for the first time that testimony regarding the murder weapon was improperly admitted into evidence without a proper cautionary instruction, in violation of *Stull v. People,* 140 Colo. 278, 344 P.2d 455 (1959). Although defense counsel made no objection at trial, it was suggested that this could be reviewed as "plain error" in accordance with Crim. P. 52(b).

In *Land v. People,* 171 Colo. 114, 465 P.2d 124 (1970) and *Bishop v. People,* 165 Colo. 423, 439 P.2d 342 (1968), it was specifically held that in the absence of a request by the defendant for a limiting instruction, it is not reversible error for the trial court to fail to give such an instruction.

Furthermore, we have examined with the utmost care all the testimony regarding the murder weapon and its introduction into evidence, and in our view, "plain error" is not indicated.

Defense counsel argued that when the testimony revealed that the murder weapon had been reported missing after a filling station burglary, the trial court had the responsibility of giving a cautionary instruction even though it was not requested. We do not agree with this suggestion especially in view of other testimony which revealed that the defendant had been employed at the same filling station and knew that this weapon was in a desk drawer. Also, the testimony does not even have the effect of accusing this defendant of being the filling station burglar. The strongest inference, which is rather obvious from all the testimony, is that the defendant as an employee of the filling station may have removed the gun from the desk drawer before the burglary.

## IV.

It was also argued on behalf of the defendant that the first-degree murder statute is unconstitutional because under our new criminal code first-degre murder and second-degree murder are indistinguishable. We recently resolved this argument in *People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973). In that opinion, it was held that the legislature in adopting sections 18-3-101(3) (definition of premeditation), 18-3-102 (murder in the first degree) and 18-3-103 (murder in the second degree), C.R.S. 1973, certainly intended that there be a meaningful distinction between first and second-degree murder. In *Sneed,* this distinction is explained in detail and the same constitutional attack as made here was rejected.

## V.

Defendant further objects that the instructions given to the jury did not meaningfully differentiate between first-degree and second-degree murder. We do not agree. In our view, the jury was adequately and meaningfully instructed on the elements of both degrees of murder.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY concur in result only.

MR. JUSTICE ERICKSON dissents.