**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Gary G. REQUEJO, Defendant–Appellant.**

No. 93CA1972.

Colorado Court of Appeals, Div. II.

April 4, 1996.

Rehearing Denied May 9, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Virginia B. Horton, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Frances S. Brown, Chief Appellate Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Gary G. Requejo, was charged with attempted first degree murder, first degree assault, and crime of violence, and he appeals from the judgment of conviction entered against him on a jury verdict finding him guilty of attempted reckless manslaughter and second degree assault. He raises two discrete issues: the propriety of the trial court's rulings excluding certain evidence and the denial of his motion to suppress. We disagree with defendant's second argument, but agree that the trial court's evidentiary ruling was reversible error. Accordingly, we reverse and remand for a new trial on the two charges of which he was convicted.

## I.

The charges arose from an altercation in the parking lot of a bar. Defendant and his friend joined in a fist fight between two bar patrons, and the victim intervened to break up the fight. After the victim pushed defendant's friend away from one of the initial participants, defendant grabbed the victim's arm, swung him around, and made jabbing, punching motions at the victim's side. As defendant continued to hold and punch the victim, defendant's friend pulled out a knife, and repeatedly stabbed the victim. This as-

sault on the victim lasted about 17 seconds. The only eyewitness to the event testified that, although he saw defendant's friend use the knife, no one yelled or said anything. He also testified that, in his opinion, defendant was busy paying attention to the victim and probably did not see that his friend had a knife.

It was undisputed that defendant did not stab the victim. The charges against defendant therefore were based on a theory of complicity, that is, while knowing that the stabbing was occurring, defendant assisted his friend by holding the victim. The defense theory was simple: defendant did not see the knife in his friend's hand and did not realize that his friend was stabbing the victim while he was holding onto him. *See* § 18–1–603, C.R.S. (1986 Repl.Vol. 8B).

Thus, for the defense, the critical fact at trial was whether defendant saw the knife. Because the knife was being used just inches away from him, defendant sought to explain why he did not notice it. Accordingly, he was prepared to present testimony that, because of mild mental retardation, he did not notice things as quickly as the average person.

Specifically, he intended to present an expert to testify that he often did not pay attention to significant details in his environment and tended to focus on one thing at a time. Thus, the expert was prepared to explain why it was unlikely during the 17–second fight that defendant had focused both on the knife and his fight with the victim.

Prior to trial, the People filed a motion *in limine* to exclude the expert's testimony, as well as similar lay testimony to the effect that defendant was a slow thinker. Although the People conceded that the evidence otherwise would be relevant, and the expert testimony admissible under CRE 702, they asserted that unless defendant pled the affirmative defense of impaired mental condition (IMC defense) pursuant to § 16–8–103.5, C.R.S. (1986 Repl.Vol. 8B), the evidence was barred. Defendant countered that his proffered evidence was not evidence of impaired mental condition.

After a hearing, the court granted the motion and excluded the testimony. Defendant now argues that the court's ruling was error which improperly prevented him from presenting a defense. We agree.

## A.

Section 16–8–103.5, as applicable here, creates the affirmative defense of impaired mental condition. Pursuant to the statute, a defendant may argue impaired mental condition only through specific assertion of the affirmative defense at the time of arraignment or, with good cause, any time prior to trial. *See* §§ 16–8–103.5(1) and 16–8–103.5(7), C.R.S. (1986 Repl.Vol. 8A).

Testimony relating to an impaired mental condition defense may be excluded if the procedural requirements of the statute are not met. *People v. Sandoval,* 805 P.2d 1126 (Colo.App.1990); *see also Rowe v. People,* 856 P.2d 486 (Colo.1993) (General Assembly has the prerogative to formulate and limit affirmative defenses).

Section 16–8–102(2.7), C.R.S. (1986 Repl. Vol. 8A), as applicable here, defines impaired mental condition as:

> [A] condition of mind, caused by mental disease or defect, which does not constitute insanity but, nevertheless, *prevents the person from forming a culpable mental state* which is an essential element of a crime charged. . . . "[M]ental disease or defect" includes only those *severely abnormal* mental conditions which *grossly and demonstrably impair a person's perception or understanding of reality* . . . . (emphasis added)

Thus, if a defendant's condition of mind is so abnormal as to render him incapable of accurately comprehending his surrounding circumstances, he or she is required to plead the statutory defense in order to present any evidence to that effect. *See People v. Sandoval, supra;* and *compare People v. Young,* 825 P.2d 1004 (Colo.App.1991) (expert testimony on defendant's perception of danger as it related to claim of self-defense not evidence of impaired mental condition) *with People v. Fincham,* 799 P.2d 419 (Colo.App. 1990) (evidence of dependent personality dis-

order, determined to be evidence of impaired mental condition, precluded because of failure to assert IMC defense).

In its ruling, the trial court described defendant's proffered evidence as an attempt to show that, because defendant did not process information quickly, he did not "understand the reality" that there was a knife in his friend's hand. As characterized, and acknowledging that the question was "very close," the court ruled this was evidence of impaired mental condition admissible only pursuant to statute. Hence, because defendant did not plead the statutory defense, the court concluded his evidence was barred. We disagree. We do not interpret the condition of mind defined in § 16–8–102(2.7) to include defendant's proffered explanation as to why he did not notice that his friend was using a knife in the assault.

First, an impaired mental condition, as defined in § 16–8–102(2.7), concerns a condition of mind which is caused by a mental disease or defect. Here, nothing in the record indicates that defendant suffered from either. *Compare* § 27–10–102(7), C.R.S. (1989 Repl. Vol. 11B) (" 'Mentally ill person' means a person with a substantial disorder of the cognitive, volitional, or emotional processes that grossly impairs judgment or capacity to recognize reality or to control behavior; mental retardation is insufficient to either justify or exclude a finding of mental illness within the provisions of this article.") *and People v. Parrish*, 879 P.2d 453 (Colo.App. 1994) (noting that the terms mental disease or defect and mental illness are used interchangeably) *with* § 16–9–401(2), C.R.S. (1995 Cum.Supp.) (" 'Mentally retarded defendant' means any defendant with significantly subaverage general intellectual functioning existing concurrently with substantial deficits in adaptive behavior . . . .").

Secondly, the statute defines as impaired mental condition only those mental diseases or defects which are "severely abnormal." Here, defendant offered proof that he was mildly mentally retarded. The trial court did not find, nor is there anything in the record which indicates that such condition, even if it constituted a "mental disease or defect," is "severely abnormal." To the contrary, defendant's expert was prepared to testify that while defendant had a low I.Q. and was learning disabled, he did not have an impaired mental condition, and was competent, sane, and not mentally ill.

Further, the statute requires that any such "mental disease or defect" grossly and demonstrably impair a defendant's "perception" of reality. The People argue that defendant's condition of mind—his slow thinking—impaired his "perception" of reality because it prevented him from actually seeing the knife. However, we disagree with the People that the term "perception," as used in the statute, refers to simple visual observation.

The General Assembly has placed the affirmative defense of impaired mental condition, not in the criminal code defining offenses and affirmative defenses, but in the code of criminal procedure within the article pertaining to "Insanity—Incompetency—Release." *See* § 16–8–101, et seq., C.R.S. (1986 Repl.Vol. 8B). Consistent with this placement, the General Assembly has classified impaired mental condition as, in effect, a mental incapacity not amounting to insanity. *See* § 16–8–102(2.7).

Also, legislative history on recent changes to the procedural requirements for raising the *impaired mental condition* defense, although otherwise inapplicable here, confirms that the General Assembly intended that, in order to be found insane or to suffer an impaired mental condition, a person must be so ill as to be unable to recognize reality. *See* Hearings on H.B. 1120 before the House Judiciary Committee, 60th General Assembly, First Regular Session (January 19, 1995).

Thus, the People's interpretation of the term "perception" is superficial. The statute must be read to refer, not to the physical event of "seeing," but to the mental process of comprehension by recognition and interpretation of what has been seen. *Cf.* § 27–10–102(7) (definition of "mentally ill person").

Here, defendant did not claim that he was unable to recognize or understand the reality that his friend had a knife. His "perception" of reality was never an issue. He simply

claimed that, even if an average person would have seen the knife, because he does not process information quickly, he did not notice it because he was focused on fighting with the victim.

■ Finally, the statutory defense applies only if a defendant intends to contest the commission of a crime because of an alleged "inability" to formulate a requisite culpable mental state. . See *Hendershott v. People,* 653 P.2d 385, 393 (Colo.1982), *cert. denied,* 459 U.S. 1225, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983); *see also People v. Low,* 732 P.2d 622 (Colo.1987).

Again, defendant did not claim that he was unable to form the *mens rea* for the crimes charged against him. The evidence was not offered to show that defendant did not have the ability to understand that his friend had a knife. To the contrary, his expert offered that defendant's understanding of reality was unimpaired and that he was fully capable of knowingly and intentionally helping someone else perform an act. The expert's description and explanation of defendant's condition of mind—that is, that he was a slow thinker, unable to focus on more than one thing at a time—was offered simply to explain the defense's assertion that, under the particular circumstances here, defendant did not notice that his friend had pulled out and used a knife to stab the victim.

### B.

■ In accordance with the defense theory of the case that defendant did not see the knife, the jury was instructed that: "[Defendant] contends that he was focused entirely on fighting with the victim and did not realize that [his friend] was simultaneously stabbing him. . . ." To the defense, this was the pivotal issue at trial.

■ Although the court did allow some lay testimony—defendant's mother's testimony that defendant was "slow"—it was severely circumscribed because of the court's decision to exclude all evidence on the issue. Furthermore, the jury was given no information as to why defendant was unable to process information quickly. Moreover, contrary to the People's contention, the fact that a defen-

dant can testify does not, *ipso facto,* preclude the expert's testimony particularly when, as here, the underlying reason for a defendant's actions is not readily understood by a jury. *See People v. Young, supra.*

Thus, this error was not harmless. *See Topping v. People,* 793 P.2d 1168 (Colo.1990) (error not harmless if it affects outcome of the trial); *Banek v. Thomas,* 733 P.2d 1171 (Colo.1986) (error not harmless where excluded testimony went to closely contested issue).

### II.

Because it may arise on remand, we address defendant's contention that the trial court erred by denying his motion to suppress statements. Defendant argued unsuccessfully to the trial court that these statements were inadmissible because they were made as a result of a custodial interrogation before the police officers issued a *Miranda* warning. We conclude that the trial court applied the proper legal standards and found facts adequately supported in the record. Thus, we find no error. *See People v. McIntyre,* 789 P.2d 1108 (Colo.1990).

Here, as defendant and his friend drove away from the bar, a description of the car was broadcast to the police. The trial court found that the first officer stopped the car within two minutes of the initial call.

As the officer was approaching the car, she called to the occupants to put their hands on the dashboard, and yelled to the driver, "Where's the knife?" Defendant, the passenger in the vehicle, responded that "the knife" was his and it was under the seat.

At that time, a second officer arrived, took defendant out of the car, handcuffed him, and placed him face-down on the ground. While lying on the ground, defendant said that he threw "the knife" out of the window. However, the record indicates that the knife which was the subject of defendant's statements was not the knife used to stab the victim. The knife used in the assault was not located.

■ As to the latter statement, the record amply supports the trial court's conclusion that this statement, although made while defendant was handcuffed and on the ground,

was volunteered and not the result of any interrogation. *Cf. People v. Sharpless,* 807 P.2d 590, 591 (Colo.1991) (interrogation includes express questioning and words or actions of officers that they "should know are reasonably likely to elicit an incriminating response").

 As to the other statements, an exception to the *Miranda* rule permits custodial interrogation directed to obtaining information important to protect the safety of officers engaged in immediate, on-scene investigation of a crime. *See People v. Founds,* 621 P.2d 325 (Colo.1981); *see also New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The questions must be strictly limited to accomplishing the officer's defensive purpose, and not be in the nature of fact-gathering as part of a preparation of proof. *See People v. Mullins,* 188 Colo. 23, 532 P.2d 733 (1975).

Here, the court reasoned that, "officers ought to be able to, very much by analogy to a *Terry* stop, ask a question without running afoul of *Miranda* when they have legitimate concerns for their safety." The court found, with record support, that for her own protection, the officer needed to locate the knife. Considering the likely existence of a weapon, the trial court determined that, removing the suspects from the car would have been insufficient protection. Thus, the court concluded that the officer's simple question directed towards locating the weapon was legitimately asked for officer safety reasons.

We agree and, therefore, find no error.

The judgment is reversed and the cause is remanded for a new trial on the charges of attempted reckless manslaughter and second degree assault consistent with this opinion.

HUME and QUINN*, JJ., concur.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1995 Cum.Supp.).