The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 4, 2019

## 2019COA48

**No. 15CA0546, *People v. Perez* — Criminal Law — Search and
Seizure — Custodial Interrogations — Miranda — Public Safety
Exception; Constitutional Law — Fifth Amendment — Right
Against Self-Incrimination**

A division of the court of appeals considers whether the public

safety exception to *Miranda* applies when an officer found shotgun

shells but no shotgun on the defendant, who had fled from another

officer, and then asked the defendant where the gun was. Here,

there was no information that the defendant was armed or that the

officer was responding to a report of a crime involving a weapon.

Based on the facts of this case, a majority of the division concludes

that there was an insufficient basis to inquire about a weapon

before the *Miranda* advisement was given, and the defendant's

motion to suppress should have been granted. Nonetheless, the

division ultimately finds that the error was harmless beyond a

reasonable doubt.  The special concurrence would conclude that the officer's inquiry fell within the public safety exception.

Court of Appeals No. 15CA0546
City and County of Denver District Court No. 14CR781
Honorable Ann B. Frick, Judge
Honorable Elizabeth A. Starrs, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Marcus Perez,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TOW
Taubman, J., concurs
Berger, J., specially concurs

Announced April 4, 2019

Philip J. Weiser, Attorney General, Brittany L. Limes, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Laura E. Schwartz, Alternate Defense Counsel, Esteban A. Martinez, Alternate
Defense Counsel, Longmont, Colorado, for Defendant-Appellant

¶ 1 Defendant, Marcus Perez, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree assault on a peace officer and four counts of possession of a dangerous weapon by a previous offender. We affirm in part, reverse in part, and remand with directions.

## I. Background

¶ 2 In February 2014, police officers conducted a traffic stop of an SUV for various traffic infractions. The officers noticed that the occupants were acting suspiciously, appeared more nervous than the officers would have expected, and may have been attempting to conceal something. An officer contacted the passenger (later identified as Perez), who provided a name and date of birth. When the officer found no record of such an individual, he asked Perez to step out of the car. Perez complied, but immediately started running.

¶ 3 Perez ran across a very busy street through rush-hour traffic, and through residential and commercial areas, while the officers pursued him. Eventually, officers caught up to him in a residential backyard. At this point, additional police officers arrived to assist. Perez took a fighting stance and began to resist the officers' efforts

to take him into custody.  During the fracas, Perez broke an officer's nose.  Another officer injured himself during the chase.

¶ 4     After handcuffing Perez, an officer frisked him and found two shotgun shells in his pocket.  Before advising him of his *Miranda* rights, the officer asked Perez where the gun was.  Perez responded that he had thrown it away.  When asked where he had thrown it, Perez's response was unintelligible.  The officer did not pursue the inquiry further.

¶ 5     At some point, other officers searched the car, though it is unclear from the record when the search occurred in relation to Perez's statement.  During the search, the officers found a short shotgun[1] between the center console and the passenger seat.

¶ 6     The prosecution later charged Perez with two counts of second degree assault on a peace officer and eight counts of possession of a weapon by a previous offender (POWPO).  All eight POWPO charges involved the same short shotgun; there were two separate charges (one alleging possession of a firearm, and one alleging possession of

---

[1] A short shotgun is "a shotgun having a barrel or barrels less than eighteen inches long or an overall length of less than twenty-six inches."  § 18-12-101(1)(i), C.R.S. 2018.

a "dangerous weapon"[2]) connected to each of four prior felony convictions.  Before trial, the prosecution dismissed one of the second degree assault charges.

¶ 7     A jury convicted Perez of the remaining assault charge and the four POWPO charges involving a dangerous weapon.  At sentencing, Perez admitted that he had three prior felony convictions, and the parties stipulated that Perez would receive a twenty-four-year prison sentence in this case, a concurrent six-year prison sentence in a separate case, and a third case would be dismissed in its entirety.  At the sentencing hearing, the court sentenced Perez to twenty-four years in prison for second degree assault and four years in prison for each of Perez's four POWPO counts.  The remaining POWPO charges were dismissed.  The court ordered that all of the sentences would run concurrently.

---

[2] "[T]he term 'dangerous weapon' means a firearm silencer, machine gun, short shotgun, short rifle, or ballistic knife." § 18-12-102(1), C.R.S. 2018.  If the weapon possessed by a previously convicted felon is a dangerous weapon, the POWPO charge is elevated from a class 6 felony to a class 5 felony.  § 18-12-108(2)(a), (b), C.R.S. 2018.

## II.    *Miranda* Violation

¶ 8    Perez first contends that the trial court erred by denying his motion to suppress incriminating statements he made after his arrest and before police advised him of his *Miranda* rights. We conclude that, although admission of the statement was erroneous, reversal is not required.

### A.    Standard of Review

¶ 9    Whether custodial interrogation has occurred in violation of *Miranda* is a mixed question of fact and law. *People v. Barraza*, 2013 CO 20, ¶ 15. We defer to the trial court's findings of historical fact and will not overturn them if they are supported by competent evidence in the record. *Id.* We then review de novo the ultimate legal effect of those facts, such as whether the defendant was in custody, *People v. Matheny*, 46 P.3d 453, 459 (Colo. 2002), or whether a particular inquiry constituted interrogation, *People v. Gonzales*, 987 P.2d 239, 242 (Colo. 1999). Although no Colorado appellate court has clearly stated that whether the public safety exception applies is a legal determination, other courts have done so. *See United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008). We agree and review the issue de novo.

¶ 10     "When reviewing a trial court's suppression ruling, appellate courts must only consider evidence presented at the suppression hearing." *People v. Bryant*, 2018 COA 53, ¶ 19.

### B.     Applicable Law

¶ 11     The Fifth Amendment of the United States Constitution provides that no person shall be compelled to be a witness against himself in a criminal case.  Police must warn a person of his rights against self-incrimination when he is subjected to custodial interrogation.  *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966); *People v. Theander*, 2013 CO 15, ¶ 20.  Absent such warnings, the prosecution generally cannot introduce in its case-in-chief any statement obtained from a suspect as a result of custodial interrogation.  *Matheny*, 46 P.3d at 462.

¶ 12     However, in some circumstances, police may question a suspect in custody who has not yet received a *Miranda* warning about the presence of weapons that could immediately endanger them or members of the public.  *See New York v. Quarles*, 467 U.S. 649, 657-58 (1984); *see also People v. Mullins*, 188 Colo. 23, 27, 532 P.2d 733, 735 (1975).  This exception to *Miranda*, called the public safety exception, applies most readily in the context of

immediate, on-scene investigations of a crime. *See People v. Requejo*, 919 P.2d 874, 879 (Colo. App. 1996). The determinative question is whether the officer's questioning related to an objectively reasonable need to protect the police or the public from immediate danger associated with a weapon. *See Quarles*, 467 U.S. at 655; *People v. Ingram*, 984 P.2d 597, 605 (Colo. 1999).

¶ 13    In *Quarles*, for example, a police officer pursued a rape suspect who had been described by the victim as carrying a gun. 467 U.S. at 651-52. The officer chased the suspect through a grocery store, ultimately apprehending him in the rear of the store. *Id.* at 652. When the officer frisked the suspect, he discovered that the defendant was wearing an empty shoulder holster. *Id.* After handcuffing him, but before advising him of his *Miranda* rights, the officer asked the suspect where the gun was located, and the suspect told him. *Id.*

¶ 14    The defendant's statements about the gun were excluded at trial because they were elicited before he had received a *Miranda* warning. The Supreme Court ultimately held that the initial statement indicating the location of the gun was admissible under a public safety exception, despite the officer failing to advise the

defendant of his *Miranda* rights. *Id.* at 657-58. It explained, "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657.

## C. Application

¶ 15    Here, there is no dispute that Perez was in custody when the officer asked about the gun. Nor do the People argue that the inquiry about the gun was not interrogation. We thus turn to the applicability of the public safety exception.

¶ 16    The public safety exception has been discussed sparingly in Colorado case law. In *Requejo*, officers were responding to a bar fight during which someone had been stabbed. 919 P.2d at 878. Within two minutes of receiving the dispatch and a description of the suspect's vehicle leaving the scene, officers located and stopped the vehicle. *Id.* An officer approached the vehicle and asked where the knife was. *Id.* A division of this court held that because the officer had a legitimate concern for her safety, the inquiry was within the scope of the public safety exception. *Id.*

¶ 17    In *People v. Janis*, a division of this court held that the public safety exception applied when officers responded to a report of a stabbing, encountered the defendant shortly thereafter near the location of the stabbing, had reason to believe that the defendant was involved in the crime, and then asked the defendant, "Do you have any weapons on you?" 2016 COA 69, ¶ 56, *rev'd on other grounds*, 2018 CO 89.

¶ 18    In *People v. Wakefield*, a division of this court held that the public safety exception applied when officers responded to a report of a shooting, found the defendant at the scene of the crime, and asked the defendant about the extent of his injuries and whether there was anyone else in the residence. 2018 COA 37, ¶ 57. There, "the officers, having just arrived on the scene, had a legitimate concern that there could be other armed suspects or injured victims in the vicinity." *Id.*

¶ 19    In *Quarles*, *Requejo*, *Janis*, and *Wakefield*, the very nature of the dispatch informed the officers that a weapon might be present; in each case, someone had already reported to the police that a weapon was involved. Here, in contrast, when the officer first contacted Perez, he had no information suggesting that Perez was

8

armed. Nor was the officer responding to a report of a crime involving a weapon. Only after the officer found shotgun shells in Perez's pocket did the officer become concerned that Perez may have disposed of a shotgun while being chased through residential and commercial areas.

¶ 20 Although bullets may suggest possession of a gun, the suggestion in this case was not so strong as to give the officer "every reason to believe" that Perez had just discarded a shotgun while being chased. *Quarles*, 467 U.S. at 657. Moreover, it is notable that the record does not reflect any other observation by the officers during their contact with or pursuit of Perez that would suggest he discarded or abandoned a shotgun. For example, there is no evidence that as he fled he appeared to be concealing anything. No officer testified that he appeared to discard anything during his flight. And nothing in the record would indicate that his clothes were capable of hiding a weapon of that size.

¶ 21 We do not suggest that purely circumstantial evidence that a weapon may be present will never be enough to justify such an inquiry. Nor do we suggest that the possible presence of a weapon must always be known to the officers before contacting the suspect.

We only hold that, on the facts of this case, where the sole suggestion that Perez may have discarded or abandoned a shotgun was two shotgun shells in his pocket, there was an insufficient basis to inquire about a weapon before the *Miranda* advisement was given. Because the officer's question was not required to protect the police or public from immediate danger associated with a weapon, the public safety exception did not apply, and the trial court erred in denying the motion to suppress the incriminating statement.[3]

¶ 22　　In the motion to suppress, Perez also sought suppression of "all evidence flowing from that statement." To the extent Perez is arguing that the gun itself should have been suppressed as a result of the *Miranda* violation, we disagree.

¶ 23　　First, the search of the car was not testified to at the suppression hearing. Therefore, whether the search of the car derived from Perez's statement is unclear. Second, even if it did,

---

[3] We are, of course, mindful of the importance of officer safety. Further, we do not mean to suggest that the officer in this case acted in bad faith or with any other improper motive. However, the fact that the officer did not inquire any further into the location of the gun would appear to demonstrate that the officers did not consider themselves in substantial danger.

the fruit of the poisonous tree doctrine does not apply to *Miranda* violations. *People v. Bradshaw*, 156 P.3d 452, 459 (Colo. 2007) ("[B]ecause *Miranda* violations do not rise to actual coercion in violation of the Fifth Amendment, the fruit of the poisonous tree doctrine does not apply."). For both of these reasons, the trial court did not err in denying the motion to suppress all evidence flowing from the statement.

¶ 24    Having concluded that admitting Perez's statement that he discarded the gun was error, we turn to whether the error warrants reversal. We review preserved trial errors of constitutional dimension for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11. Under this standard, we must reverse unless the error was harmless beyond a reasonable doubt, meaning there is no reasonable possibility that the error might have contributed to the conviction. *Id.* We conclude the error was harmless beyond a reasonable doubt.

¶ 25    The shotgun was located in the car; thus, Perez had not thrown it away. The evidence of Perez's possession of the weapon was overwhelming without regard to the statement. He possessed ammunition for the gun, the gun was closest to where he was

seated in the car, and he fled from the police upon contact. Significantly, the prosecution did not even mention Perez's statement during closing argument. There is no reasonable possibility that the statement contributed to the verdict. Therefore, we conclude that the error was harmless beyond a reasonable doubt.

## III. Double Jeopardy

Perez also contends that the trial court erred in allowing the jury to convict him of four counts of POWPO when the charges derived from the same weapon. We agree.

### A. Standard of Review

Unpreserved double jeopardy claims may be raised for the first time on appeal, and we review such claims for plain error. *Reyna-Abarca v. People*, 2017 CO 15, ¶ 2. Plain error is error that is obvious and substantial, and that casts serious doubt on the reliability of the judgment of conviction. *Hagos v. People*, 2012 CO 63, ¶ 14. Because whether merger applies to specific criminal offenses presents an issue of statutory interpretation, we review the matter de novo. *People v. Zweygardt*, 2012 COA 119, ¶ 10.

## B. Applicable Law

¶ 28    In Colorado, a person commits the crime of POWPO if he or she knowingly possesses a firearm subsequent to a felony conviction. § 18-12-108, C.R.S. 2018. A person with multiple prior felony convictions may not be convicted of multiple POWPO counts for possession of a single gun during a single incident. *People v. DeWitt*, 275 P.3d 728, 736-37 (Colo. App. 2011).

## C. Application

¶ 29    Because the necessity of merging these convictions is established in case law, the error was obvious. And because double jeopardy prohibits more than one conviction for the same offense, the error was substantial. Finally, the reliability of the judgment of conviction is clearly in doubt because the trial court failed to merge the convictions appropriately. The error here was plain.

¶ 30    We therefore reverse this portion of the judgment and remand the case to the trial court to vacate Perez's POWPO convictions and sentences on counts four, five, and six.

## IV. Due Process Challenge

¶ 31    Perez lastly contends that the trial court erred by allowing the prosecution to proceed when law enforcement's outrageous conduct

violated his federal and state rights to due process. Specifically, Perez alleges that (1) the traffic stop should have ended once the officer "cleared the driver"; (2) the officers had no basis for detaining and chasing him; and (3) the officers beat Perez after he put his hands up, "a universal sign of surrender."

## A. Standard of Review

¶ 32 We review a trial court's dismissal of a case based on a finding of outrageous governmental conduct for an abuse of discretion. *People v. McDowell*, 219 P.3d 332, 336 (Colo. App. 2009). *But see People v. Burlingame*, 2019 COA 17, ¶¶ 28-34 (Tow, J., specially concurring) (positing that the proper standard of review should be de novo). However, this claim is also raised for the first time on appeal. Because this claim was not preserved, we review for plain error. *People v. Rediger*, 2018 CO 32, ¶ 40.

## B. Law and Application

¶ 33 The Supreme Court has recognized certain circumstances in which the conduct of police officers may be so outrageous as to violate a defendant's right to due process. *United States v. Russell*, 411 U.S. 423 (1973). "Outrageous governmental conduct is conduct that violates fundamental fairness and is shocking to the

14

universal sense of justice." *People v. Medina*, 51 P.3d 1006, 1011 (Colo. App. 2001), *aff'd sub nom. Mata-Medina v. People*, 71 P.3d 973 (Colo. 2003).

¶ 34    However, instances in which trial courts have found outrageous governmental conduct in Colorado are rare. *Compare People v. Auld*, 815 P.2d 956, 959 (Colo. App. 1991) (finding outrageous governmental conduct and affirming the dismissal of a case based on a fictitious complaint filed against a fictitious defendant in order to investigate a later-retained defense attorney), *with People in Interest of M.N.*, 761 P.2d 1124, 1129 (Colo. 1988) (finding no outrageous governmental conduct when an undercover officer convinced a minor to steal tires and obtain marijuana for him and then shared the marijuana with the minor), *and People v. Morley*, 725 P.2d 510, 515 (Colo. 1986) (finding no outrageous governmental conduct when an undercover operation discovered evidence linking an attorney with prostitution-related activity).

¶ 35    Perez has not cited to any authority, nor have we found any, suggesting the conduct that occurred here was outrageous. The due process claim of outrageous governmental conduct is "interwoven with the entrapment defense." *M.N.*, 761 P.2d at 1131

15

(quoting *United States v. Szycher*, 585 F.2d 443, 445 (10th Cir. 1978)). Nothing in Perez's allegations indicates the police encouraged or participated in Perez's commission of the crimes for which he was prosecuted. Perez gave what appeared to the officer to be a false name, then fled. Officers pursued him and eventually apprehended him. Upon apprehension, Perez fought the officers, assaulting one of them. Perez chose to flee by running across a major thoroughfare in busy traffic and elected to fight the arresting officers; these were decisions entirely of his own making.

¶ 36 Perez has not shown any error, let alone plain error.

## V. Conclusion

¶ 37 The judgment is reversed in part and remanded with directions to vacate Perez's POWPO convictions and sentences in counts four, five, and six and to correct the mittimus accordingly. The judgment is affirmed in all other respects.

JUDGE TAUBMAN concurs.

JUDGE BERGER specially concurs.

JUDGE BERGER, specially concurring.

¶ 38    In *New York v. Quarles*, 467 U.S. 649 (1984), the United States Supreme Court recognized the "public safety exception" to the rule of *Miranda v. Arizona*, 384 U.S. 436 (1966).  Reasoning that the "need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination," the Court held that a suspect's answers to questions concerning the location of an abandoned weapon were admissible even though the suspect was not given *Miranda* warnings.  *Quarles*, 467 U.S. at 657; *see also People v. Ingram*, 984 P.2d 597 (Colo. 1999); *People v. Allen*, 199 P.3d 33 (Colo. App. 2007).

¶ 39    *Quarles* has spawned many perplexing questions for courts — the permissible timing of unwarned interrogations, the permissible length of such interrogations, the permissible subjects of such inquiries, and the effect of the suspect's invocation of the right to counsel.  *See* Brian Gallini, *The Languishing Public Safety Doctrine*, 68 Rutgers U. L. Rev. 957 (2016).

17

¶ 40 But this is not such a case. This case, instead, presents a straightforward application of *Quarles*, and I am convinced that the majority incorrectly applies it.

¶ 41 When the police discovered live shotgun shells in Perez's pockets, any reasonable police officer (or other person) would have inferred from that discovery that there was a strong likelihood that Perez had access to a gun during the criminal episode. Once the officer drew that entirely reasonable inference, the officer was entitled, under the public safety exception, to ask Perez where the gun was, and neither *Miranda* nor the Fifth Amendment protections against self-incrimination were impediments to the admission of Perez's response at his criminal trial. *Quarles*, 467 U.S. at 658-60. Unlike in either *Ingram*, 984 P.2d 597, or *Allen*, 199 P.3d 33, the officer did nothing more than ask about the location of the weapon.

¶ 42 As I read the majority opinion, it concludes that the public safety exception was inapplicable for two reasons. First, the majority correctly notes that the police did not know before discovering the shotgun shells that Perez had, or might have had, a gun. Second, the majority evidently reasons that finding two live shotgun shells in the suspect's pockets is insufficient to raise a

18

reasonable inference that Perez had, or recently had access to, a gun.

¶ 43    With respect to the majority's first point, I agree with its factual observation, but I believe it is irrelevant to the application of the public safety exception. I have not found, and the majority has not cited, a single case that turns on whether the police discover that the suspect might have access to a gun before or after the suspect's apprehension. More important than the absence of such a case is the underlying rationale for the public safety doctrine. As the name of the exception well illustrates, the purpose of the exception is to protect both officers and public safety. *When* the police discover that the person they have apprehended has or had access to a gun is completely irrelevant to whether such a weapon is a danger to the police or to the public.[1]

_____

[1] The cases are clear that the fact that the suspect is in custody and handcuffed does not prevent the application of the public safety doctrine. *New York v. Quarles*, 467 U.S. 649, 655 (1984); *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009); *People v. Janis*, 2016 COA 69, ¶¶ 52-53, *rev'd on other grounds*, 2018 CO 89. Moreover, as illustrated here, the fact that the suspect is in custody does not eliminate danger to the police. Here, the shotgun was found in the vehicle in which Perez had been a passenger. That shotgun continued to be a danger to the police or anyone else who had access to the vehicle.

¶ 44     Regarding the majority's second point, in my view (based on logic, not experience), when a person carries live shotgun shells in his pockets, the chances are pretty good that the person has, or had relatively immediate possession of or access to, a firearm that is capable of firing those shells.  I am not aware, nor is it logical to assume, that most people carry live shotgun shells in their pockets for no reason.  This does not mean that, in every case, a person carrying live shotgun shells will have immediate access to a gun.

¶ 45     The undisputed evidence established that Perez led the officers on a lengthy foot chase across a busy highway and onto both commercial and residential properties.  Indeed, he finally was apprehended in a residential backyard.  The secretion of a shotgun in any of those locations could seriously impact the safety of both investigating officers and members of the public.  Had Perez secreted the gun in a residential backyard, such as the place where he was apprehended, the real possibility of a child discovering the gun and the tragedy that might follow is unmistakable and unacceptable.

¶ 46     Under these circumstances, the officer properly asked Perez where the gun was before giving him *Miranda* warnings, and Perez's

20

answer was not barred by *Miranda* or the Fifth Amendment. *Quarles*, 467 U.S. at 658-60.

¶ 47    For these reasons, and with respect, I disagree with the majority's contrary determination.  I agree entirely with the balance of the majority's opinion and disposition.