Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
January 19, 2021

**2021 CO 5**

**No. 19SC356,** *Perez v. People*—**Criminal Law**—*Miranda* **Warnings**—**Public Safety
Exception to** *Miranda***.**

After an extended foot chase and discovery of live shotgun shells on the
defendant's person, a police officer asked the defendant about the location of a gun and
the defendant answered that he had thrown the gun away.  After being charged with
possession of a dangerous weapon by a previous offender ("POWPO"), the defendant
moved to suppress his answer, arguing that the statement was obtained in violation of
*Miranda v. Arizona*, 384 U.S. 436 (1966), because he was not provided *Miranda* warnings
before the officer asked the question.  Ultimately, the defendant's answer to the question
"Where's the gun?" was admitted at trial under the public safety exception to *Miranda*,
and he was convicted.

The defendant appealed, and the court of appeals affirmed, holding that the public
safety exception did not apply but that the error was harmless.  The defendant petitioned
the supreme court for certiorari review.

The supreme court holds that the public safety exception applies and therefore
affirms on other grounds.  Whether the public safety exception applies turns on whether,

under the totality of the circumstances, the officer's questioning relates to an objectively reasonable need to protect the public from immediate danger, not whether the officer had "every reason to believe" that a weapon is in play.  Moreover, whether an officer was aware of the existence of a potential weapon at the time of dispatch is not dispositive; the relevant time to evaluate whether there was an objectively reasonable need to protect the public is when the officer asked the question.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2021 CO 5

**Supreme Court Case No. 19SC356**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA546

**Petitioner/Cross-Respondent:**

Marcus Perez,

v.

**Respondent/Cross-Petitioner:**

The People of the State of Colorado.

**Judgment Affirmed and Opinion Vacated**
*en banc*
January 19, 2021

**Attorneys for Petitioner/Cross-Respondent:**
Laura E. Schwartz
  *Denver, Colorado*

The Noble Law Firm, LLC
Antony Noble
  *Lakewood, Colorado*

**Attorneys for Respondent/Cross-Petitioner:**
Philip J. Weiser, Attorney General
Brittany L. Limes, Assistant Attorney General
  *Denver, Colorado*

**CHIEF JUSTICE BOATRIGHT** delivered the Opinion of the Court.

¶1    As Marcus Perez was being arrested after a lengthy foot pursuit, Officer Walsh found two live shotgun shells in Perez's pocket.  Without giving Perez *Miranda* warnings, Officer Walsh asked him, "Where's the gun?"  Perez answered that he had thrown the gun away.  At a suppression hearing, Perez argued that his answer should be suppressed because he was not Mirandized before the officer questioned him.  The trial court disagreed, finding that the public safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966), applied.  A jury convicted Perez of second-degree assault on a peace officer and four counts of possession of a dangerous weapon by a previous offender ("POWPO").

¶2    Perez appealed, contending that the public safety exception did not apply.  The court of appeals agreed but deemed the error harmless beyond a reasonable doubt and affirmed the convictions.  *People v. Perez*, 2019 COA 48, ¶¶ 21, 24, __ P.3d __.

¶3    Perez petitioned this court for certiorari review of the court of appeals' decision, arguing that the error was not harmless and that his convictions should be overturned.  The People cross-petitioned, arguing that the court of appeals erred when it held that the public safety exception did not apply.  We granted

certiorari on both issues.[1]  We now hold that, under the facts of this case, the public safety exception applied, and Officer Walsh was not required to give *Miranda* warnings before inquiring about the gun's location.  Therefore, we affirm the court of appeals' opinion on other grounds.[2]

## I.  Facts and Procedural History

¶4      In February 2014, police officers stopped a vehicle in which Perez was a passenger.  As the officers approached the vehicle, they noticed the occupants acting as though they were concealing something.  As a result, one officer approached the driver-side door while another approached the passenger-side door.  The officers observed Perez acting nervously, and Perez initially refused to interact with the officer on his side of the car.  Ultimately, Perez provided that

---

[1] We granted certiorari to review the following issues:

1.  Whether the court of appeals erred in finding a *Miranda v. Arizona*, 384 U.S. 436 (1966), violation harmless beyond a reasonable doubt when the prosecutor and a police officer told the jury that the petitioner said he threw the shotgun away.

2.  Whether the public safety exception to *Miranda v. Arizona*, 384 U.S. 436 (1966), applies when an officer asks the arrestee, "Where's the gun?"

[2] Because we conclude that the trial court did not err, we do not reach the issue of harmlessness.

officer with a name. When the officer discovered that no such name existed in a police database, he asked Perez to step out of the vehicle.

¶5      Perez got out of the car and immediately fled. The officer followed on foot. Perez jumped fences, running through residential backyards. He crossed a busy street and, in the parking lot of a liquor store, attempted to steal an occupied car. When the occupant refused to get out of the car, Perez ran into the liquor store. At that point, the officer lost sight of Perez. But after an employee of the liquor store indicated that Perez had run to the back of the store, the officer regained sight of Perez as Perez exited the back door.

¶6      Eventually, backup officers, including Officer Walsh, arrived to help. The officers caught up with Perez in a residential backyard. Perez assumed a fighting stance and resisted arrest. Throwing punches, Perez broke an officer's nose before he was handcuffed.

¶7      Officer Walsh frisked Perez for weapons and found two live shotgun shells in his pocket. Without providing Perez *Miranda* warnings, Officer Walsh immediately asked, "Where's the gun?" Perez responded that he "threw it away." Officer Walsh again asked Perez about the location of the gun. This time, Perez's response was unintelligible, and Walsh stopped his questioning. Later, officers discovered a short shotgun in the stopped vehicle, lodged between the center

4

console and the passenger seat; the shotgun was capable of firing the live shells found on Perez.

¶8 The People charged Perez with second-degree assault on a peace officer and eight counts of POWPO.[3] Before trial, Perez moved to suppress his statement that he threw the gun away, arguing that his Fifth Amendment right was violated because Officer Walsh did not give him *Miranda* warnings before asking the whereabouts of the gun. The trial court denied the motion, concluding that Officer Walsh's question fell within the public safety exception to *Miranda*. The statement was admitted at trial. Ultimately, the jury found Perez guilty of second-degree assault on a peace officer and four of the eight counts of POWPO.

¶9 Perez appealed, reasserting his Fifth Amendment argument. *Perez*, ¶ 8. A split division of the court of appeals agreed with him, holding that Officer Walsh's question was not covered by the public safety exception. The majority reasoned that, because Officer Walsh had no information suggesting a weapon was involved until discovering the two shotgun shells, he did not have "'every reason to believe' that Perez had just discarded a shotgun while being chased." *Id.* at

---

[3] Each POWPO charge was related to the short shotgun found in the stopped vehicle. There were two charges—possession of a firearm and possession of a "dangerous weapon"—each connected to four prior felony convictions.

5

¶¶ 19–20 (quoting *New York v. Quarles*, 467 U.S. 649, 657 (1984)).  The majority thus concluded that admitting Perez's response to the impermissible interrogation was error.

¶10    Nevertheless, the majority affirmed Perez's convictions, deeming the error harmlesss beyond a reasonable doubt.  *Id.* at ¶ 24.  It reasoned that "evidence of Perez's possession of the weapon was overwhelming without regard to the statement."  *Id.* at ¶ 25.  First, the shotgun was located where Perez had easy access to it—between the center console and the passenger seat where he had been sitting.  *Id.*  Second, Perez possessed ammunition that was capable of being fired by the shotgun.  *Id.*  Last, Perez fled from the police.  *Id.*[4]

¶11    Judge Berger specially concurred.  *People v. Perez*, 2019 COA 48, __ P.3d __ (Berger, J., specially concurring).  He concluded that this case "presents a straightforward application of *Quarles*," the U.S. Supreme Court case which established the public safety exception.  *Id.* at ¶ 40.  He noted that Perez led police on a lengthy foot chase across a busy street as well as through commercial and residential areas.  *Id.* at ¶ 45.  He reasoned that the possibility of Perez having left

---

[4] The court of appeals also reversed the portion of the judgment that imposed multiple POWPO convictions arising from the same incident involving the same weapon.  *Perez*, ¶¶ 29–30.  This issue is not before the court.

a loaded gun in any of those locations posed a safety threat to police and members of the public. *Id.* Therefore, in Judge Berger's view, the question "Where's the gun?" fell squarely within the public safety exception to *Miranda*. *Id.* at ¶ 46.

¶12 We granted certiorari and now affirm on other grounds.

## II. Analysis

¶13 We begin by outlining the appropriate standard of review. Next, we detail relevant case law on the Fifth Amendment's right against self-incrimination, including the warnings prescribed by the U.S. Supreme Court in the *Miranda* decision. We then turn to the exception to *Miranda* relevant in this case—the public safety exception—reviewing *Quarles* and Colorado law applying *Quarles*. Finally, we apply the relevant law and hold that, under the facts of this case, the public safety exception applied, meaning Officer Walsh was not required to give *Miranda* warnings before asking Perez where the gun was. Accordingly, we affirm the court of appeals' opinion on other grounds.

## A. Standard of Review

¶14 Whether a custodial interrogation occurred in violation of *Miranda* is a mixed question of law and fact. *People v. Barraza*, 2013 CO 20, ¶ 15, 298 P.3d 922, 925. We defer to the trial court's factual findings if they are supported by the record, but we review the legal effect of those findings de novo. *Id.*, 298 P.3d at 926.

7

## B. *Miranda v. Arizona*

¶15 The Fifth Amendment to the United States Constitution ensures that no criminal defendant may be compelled to testify against himself. In *Miranda*, the U.S. Supreme Court held that police must inform a person of his right against self-incrimination when he is subjected to custodial interrogation. 384 U.S. at 478–79. The Court held that such a rule is necessary to protect the Fifth Amendment right against self-incrimination because custodial interrogations create inherently coercive environments that make *Miranda* warnings necessary to remind defendants of their constitutional right. *Id.* at 445–58.

¶16 The rule, however, is not absolute. In some circumstances, officers may question a suspect in custody without first offering *Miranda* warnings. One such circumstance involves the public safety exception.

## C. The Public Safety Exception

¶17 The public safety exception applies if "the exigency of the circumstances warrant[s] the momentary omission of *Miranda* warnings." *People v. Ingram*, 984 P.2d 597, 605 (Colo. 1999) (citing *Quarles*, 467 U.S. at 658). The exception exists because, in such cases, the need to protect the public from perceived immediate danger outweighs *Miranda*'s prophylactic purpose of guarding a defendant's Fifth Amendment right. *See Quarles*, 467 U.S. at 657. In cases involving weapons, the exception applies only where the officer's questioning relates to an objectively

8

reasonable need to protect the public from the immediate danger associated with a weapon. *See id.* at 656–57; *Ingram*, 984 P.2d at 605. To determine whether officers had a reasonable concern for public safety, a court must consider the totality of the circumstances. *See Quarles*, 467 U.S. at 656–57 (discussing the facts that indicated a threat to public safety); *People v. Janis*, 2016 COA 69, ¶ 56, 441 P.3d 1, 13 (same), *rev'd on other grounds*, 2018 CO 89, 429 P.3d 1198.

¶18 The U.S. Supreme Court adopted the public safety exception in *Quarles*. 467 U.S. at 657–58. In that case, a rape victim told police that her assailant had entered a supermarket with a weapon. *Id.* at 651–52. Officers arrived at the supermarket and spotted the suspect, Quarles. *Id.* at 652. Quarles ran toward the back of the store and an officer pursued him. *Id.* At one point, the officer lost sight of Quarles. *Id.* When the officer finally caught up to Quarles, the officer detained him and discovered that he had an empty shoulder holster. *Id.* The officer immediately asked Quarles where the gun was, and Quarles gestured toward some empty cartons and responded, "The gun is over there." *Id.*

¶19 The Court held that a public safety exception to the *Miranda* rule existed because "the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." *Id.* at 657. The Court explicitly held that "the availability of th[e] exception does not depend upon the

motivation of the individual officers involved." *Id.* at 656. Rather, where "officers ask questions reasonably prompted by a concern for the public safety," *Miranda* should not apply "in all its rigor." *Id.* The Court concluded that because the facts of the case "confronted [officers] with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe . . . [was] in the supermarket," the officer's question about the location of the gun was not barred by *Miranda*. *Id.* at 657, 659.

¶20 Prior to *Quarles*, this court adopted its own public safety exception in *People v. Mullins*, 532 P.2d 733 (Colo. 1975). In that case, police had arrived at the scene of a homicide and were informed that there had been a shooting. *Id.* at 735. Upon learning this information, in an exchange similar to the one in the instant case, an officer—without giving *Miranda* warnings—asked the suspect about the location of the gun. *Id.* The suspect answered that he had thrown it out the window. *Id.* We held that the officer's question was "entirely reasonable" to protect the public. *Id.* We highlighted that the question was related to a "proper defensive purpose" and was not "in the nature of fact gathering as a part of the preparation of proof to be used against a defendant." *Id.* (quoting *State v. Hudson*, 325 A.2d 56, 62 (Me. 1974)).

¶21 But the public safety exception has its limits. For example, in *Ingram*, we held that the exception did not apply when the custodial interrogation occurred

hours after the suspect had been detained. 984 P.2d at 605. There, we reasoned that there was no "immediate necessity" or "exigency" which would justify questioning the suspect about the ownership of a weapon without first giving *Miranda* warnings. *Id.* Indeed, the officer's interrogation "did not relate to an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon." *Id.* (citing *Orozco v. Texas*, 394 U.S. 324 (1969)).

¶22    As *Quarles* demonstrates, the application of the public safety exception turns on whether the questioning relates to an objectively reasonable need to protect the public from immediate danger—a necessarily fact-specific determination. *See Quarles*, 467 U.S. at 656–57. The court of appeals has repeatedly employed this fact-intensive analysis. *See, e.g.*, *People v. Requejo*, 919 P.2d 874, 879 (Colo. App. 1996) (holding that an officer's question about the location of a knife fell within the exception because it was justified to "protect the safety of officers engaged in immediate, on-scene investigation of a crime"); *Janis*, ¶ 56, 441 P.3d at 13 (holding that an officer's question about the location of a knife fell under the exception because, given the surrounding facts, it was clear that the question was asked for safety purposes); *People v. Wakefield*, 2018 COA 37, ¶ 57, 428 P.3d 639, 651 (holding that officers were justified in asking the suspect whether there was anyone else in

11

the residence because there was "legitimate concern that there could be other armed suspects or injured victims in the vicinity").

¶23 In sum, *Quarles* and Colorado law applying *Quarles* demonstrate that whether the public safety exception applies depends on whether, under the totality of the circumstances, the officer's questioning relates to an objectively reasonable need to protect the public from immediate danger. With this framework in mind, we now turn to the issue of whether Officer Walsh's question, "Where's the gun?," fell within the public safety exception.

## D. Application

¶24 The court of appeals held that the public safety exception did not apply here because the shotgun shells were the "sole suggestion that Perez may have discarded or abandoned a shotgun." *Perez*, ¶ 21. The court of appeals distinguished cases such as *Quarles*, *Requejo*, *Janis*, and *Wakefield*, noting that in those cases, "the very nature of the dispatch informed the officers that a weapon might be present," whereas here, "when the officer first contacted Perez, he had no information suggesting that Perez was armed." *Id.* at ¶ 19. But while an officer's knowledge of the existence of a potential weapon at the time of dispatch may be relevant, it is not dispositive. The key inquiry, rather, is whether the totality of the circumstances made it reasonable for the questioning officer to believe that a threat to public safety existed *when the officer asked the question*.

12

¶25 Moreover, the proper standard is not whether the officer has "every reason to believe" that a weapon is involved or has been discarded. Rather, the proper standard is whether "police officers ask questions reasonably prompted by a concern for the public safety." *Quarles*, 467 U.S. at 656. It is true that, in *Quarles*, the Court noted that officers had "every reason to believe" that a weapon had been discarded in a supermarket. *Id.* at 657. The officers' certainty, however, was not determinative of whether the public safety exception applied; it was simply part of the totality of the circumstances that made it reasonable for the officers to believe that a threat to public safety existed. In the instant case, the court of appeals erred by assuming that the determination of whether the exception applies turns on whether the questioning officer is certain of the involvement of a weapon. The legal standard has been and remains whether, under the totality of the circumstances, the officer's questioning relates to an objectively reasonable need to protect the public from the immediate danger associated with a weapon.

¶26 Here, Officer Walsh's question met that standard and fell within the public safety exception. The totality of the circumstances made it reasonable for Officer Walsh to believe that a threat to public safety existed when he asked, "Where's the gun?" From the outset of the encounter, officers had a reasonable belief that Perez was hiding something from them. When officers first stopped the vehicle, Perez acted as though he was trying to conceal something. And when contacted by

13

officers, Perez provided them with a false name. Perez then attempted to avoid capture when he immediately fled upon getting out of the stopped vehicle, leading police on a lengthy foot chase and trying to steal an occupied car. Finally, Perez violently resisted arrest when he was ultimately cornered. All of these actions indicate that he sought to conceal criminal conduct or some incriminating evidence. Moreover, once Officer Walsh conducted the pat down and recovered two live shotgun shells from Perez, it was reasonable to believe that Perez had been armed with a firearm at some point and that the situation posed a public safety threat. *See Quarles*, 467 U.S. at 652 (noting that an officer had "frisked [the defendant] and discovered that he was wearing a shoulder holster which was then empty" before asking him about the location of the gun). Again, Perez had just led officers on a lengthy foot chase through commercial and residential areas. Importantly, officers lost sight of Perez for a period of time, raising the possibility that Perez had discarded the firearm in an area where people could find it, creating a public safety threat. Thus, under the totality of the circumstances, at the moment Officer Walsh asked "Where's the gun?," the question related to an objectively reasonable need to protect the public from immediate danger.

¶27 We hold, therefore, that under the facts of this case, the question about the location of the gun fell under the public safety exception to *Miranda*. Because we conclude that no constitutional error occurred when the trial court admitted

14

Perez's response that he threw the gun away, we need not consider the court of appeals' harmlessness analysis.

## III. Conclusion

¶28     Accordingly, we vacate the court of appeals' opinion and affirm the judgment of conviction on the grounds that Officer Walsh's question, "Where's the gun?," fell under the public safety exception to *Miranda*.